697 A.2d 96

Charles F. COLAO, et al.

v.

COUNTY COUNCIL OF PRINCE GEORGE'S COUNTY, Sitting as the District Council, et al.

No. 82, Sept. Term, 1996.

Court of Appeals of Maryland.

July 25, 1997.

344

Thomas E. Dernoga (Gray & Dernoga, on brief), Highland, for Petitioners.

Ellis J. Koch, Rockville; Joyce B. Nichols, Principal Counsel to District Counsel, Prince George's County Council (William E. Knight, Upper Marlboro, all on brief), for Respondents.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, RAKER and WILNER, JJ.

WILNER, Judge.

This appeal arises from two zoning decisions made by the Prince George's County Council, sitting as a District Council pursuant to Maryland Code (1957, 1997 Repl.Vol.), § 8–101(a) of Article 28. Two procedural issues are before us: (1) whether the District Council was obliged to remand the two matters for a new hearing before the Zoning Hearing Examiner, rather than acting upon them, because a copy of the applicant's Basic Plan was not in the Examiner's file prior to the hearing that he had held on the matters, as required by § 27–187 of the Prince George's County Code, and (2) whether appellants filed a timely petition for judicial review with respect to one of the two matters. The Court of Special Appeals answered both questions in the negative (*Colao v. Prince George's County*, 109 Md.App. 431, 675 A.2d 148 (1996)), as shall we.

## I. *PROCEDURAL REQUIREMENTS AND HISTORY*

### A. The Applications

On October 26, 1993, Northpeak–Race Track Limited Partnership (Northpeak) filed with the District Council two applications for zoning map amendments. Both applications were in furtherance of Northpeak's desire to build a townhouse development and retail center on approximately 99 acres of land at the intersection of Route 197 and Race Track Road in the vicinity of Bowie, Maryland. A 30–acre tract, lying in the northwest quadrant of the intersection, was then zoned R–A (Rural Agricultural); the other 69 acres, lying in the southeast quadrant, were in R–R (Rural Residential) and R–A zones.

Application No. A–9900 concerned the townhouse development and sought R–S (Residential–Suburban) zoning for the 30–acre tract in the northwest quadrant and 65 of the 69 acres in the southeast quadrant. Northpeak proposed, initially, to

build 235 single-family attached homes on the 65–acre parcel and to leave the 30–acre parcel undeveloped. Application No. A–9901 dealt with the proposed retail center; it sought to have a four-acre parcel located within the 69–acre tract rezoned from R–R to L–A–C (Local Activity Center). The initial proposal was to build 20 single-family attached homes and 25,000 square feet of retail commercial space in the L–A–C area. We were informed that a separate application was required for that parcel because a different zoning classification was requested (L–A–C as opposed to R–S). Throughout the review process, however, the two applications were considered together; to some extent, they were based on the same supporting documents.

## B. Procedural Process and Requirements

Under §§ 27–494 and 27–511 of the Prince George's County Code, R–S and L–A–C zones are regarded as "comprehensive design zones." The application and review process with respect to such zones is governed by §§ 27–179 through 27–198 of the Code. Section 27–179 prescribes what must be included in and with an application. Among other things, the application must include a copy of a Basic Plan setting forth the physical characteristics of the property, the general types of land uses proposed, the range of dwelling unit densities and commercial and industrial intensities proposed, a general vehicular and pedestrian circulation pattern and the general location of major access points, areas not proposed to be developed with residential, commercial, or industrial uses, the relationship of proposed development on the property to existing and planned development on surrounding properties, a forest stand delineation, and, when appropriate, the general location of proposed moderately priced dwelling units. An application for L–A–C zoning must also include a construction schedule. § 27–179(c)(1)(D) & (E).

There is no dispute, in this Court, that the two applications filed by Northpeak complied in every material respect with

the requirements of § 27–179. In particular, they included a reproducible copy of the Basic Plan.[1]

Upon the filing of an application, the Zoning Hearing Examiner sets a date for a public hearing. § 27–185. Various notices are then given to interested persons and agencies. The property is posted at least 60 days prior to the scheduled hearing (§ 27–186(b)); the Zoning Hearing Examiner notifies the applicant, all persons of record, any municipality located within one mile of any part of the property, and the Planning Board of the hearing date (§ 27–186(a)(1)); within 30 days after an application is filed, the Planning Board sends, by certified mail, a letter "regarding the pending application," containing, among other things, advice on where to obtain additional information, to all adjoining property owners (§ 27–186(c));[2] and, within 10 days after the end of each month, the Planning Board makes available to the public a list of all map amendment applications filed during the month (§ 27–186(d)). There is no dispute in this Court that all of the notices required by § 27–186 were given in accordance with the ordinance.

In addition to receiving comments from outside persons and agencies, the Planning Board receives a report on each application from its Technical Staff. § 27–189. Prior to preparing

---

**1.** Three plans are ultimately required for a comprehensive design zone. The first, which, as noted, must accompany the application for a zoning map amendment, is the Basic Plan setting forth, in general fashion, the proposed development. Once the map amendment is approved, but before a preliminary subdivision plat may be filed, the developer must file with the Planning Board a Comprehensive Design Plan, which must be in accord with the Basic Plan but which shows the proposed development in greater detail. *See* §§ 27–516 through 27–518. The final plan, which must be filed with or before the final subdivision plat, is the Specific Design Plan showing, in even greater detail, the proposed development. *See* §§ 27–525 through 27–527. A Comprehensive Design Plan and a Specific Design Plan may accompany the Basic Plan at the zoning map amendment level, although they did not in this case.

**2.** It is this notice from the Planning Board that informs the residents of their right to become parties of record and of the fact that, unless they become parties of record. they may receive no notice of the hearing before the Zoning Hearing Examiner.

its report, the Technical Staff sends a copy of the proposal to all public agencies and municipalities with operational or planning responsibility over the property. A copy of the Technical Staff Report, which may be written only after responses from the public agencies and municipalities have been received, is sent to all persons of record and all other persons who request a copy. It must contain, among other things, the Technical Staff's recommendation.

Before any decision by the Zoning Hearing Examiner, the Planning Board holds its own hearing on the application.[3] § 27–191. The hearing, which is open to the public, may not be held until at least 30 days after the Technical Staff Report is received, and all persons who made a written request for the Technical Staff Report are notified of the hearing date. Prior to the hearing, the applicant and any other person may submit written responses to the Technical Staff Report. At the conclusion of the hearing, the Planning Board, by resolution adopted at a public meeting, makes its recommendation on the application. § 27–192. A copy of the resolution is sent to the District Council and to all persons of record.

The Zoning Hearing Examiner conducts a hearing in accordance with the procedures set forth in §§ 27–127 and 27–129, following which he prepares, serves on all persons of record, and files with the District Council a written report and recommended disposition. Any person of record may file exceptions to the Examiner's decision and a request for oral argument before the District Council. § 27–131(a). If a request for oral argument is made, it must be granted. § 27–131(c). Although no new evidence may be presented at the District Council hearing, the Council may remand a case to the Zoning Hearing Examiner "for the purpose of reopening the record to receive and evaluate additional evidence." § 27–131(f). It may also remand a case "for clarification or for

---

3. The Prince George's County Planning Board consists of those members of the Maryland–National Capital Park and Planning Commission appointed by the governing body of Prince George's County. *See* Maryland Code (1957, 1997 Repl.Vol.), § 7–111(a) of Article 28.

additional testimony" and may remand a zoning map amendment case for a de novo hearing "where there is good cause and the applicant does not object." § 27–133(a)(1). Hearing procedures for the Council are set forth in § 27–132.

If the application is for a comprehensive design zone, it may be approved only if it conforms in certain specific respects to the Master Plan. *See* §§ 27–195(b)(1)(A) and 27–132(c)(1)(C). Among other things and in relevant part, the applicant must satisfy the District Council that (1) the Basic Plan conforms to the specific recommendations of the General Plan map, the Area Master Plan map, or certain principles and guidelines of the plan text, (2) transportation facilities will be adequate to carry anticipated traffic and the proposed uses will not generate traffic that would lower the level of service anticipated by the land use and circulation systems shown on the approved General or Area Master Plans, and (3) environmental relationships reflect compatibility between the proposed general land use types and surrounding land uses. § 27–195(b)(1). In approving a zoning map amendment, the District Council may impose reasonable requirements and safeguards in the form of conditions. § 27–195(c).

## C. Procedural History

One of the issues, with particular reference to Application No. A–9900, was whether the proposed rezoning was in conformance with the regional Master Plan. That plan recommended that R–A zoning be retained for the 30–acre parcel in the northwest quadrant but that the 69–acre southeast parcel be rezoned to R–S for development at a density of 1.6 to 2.6 dwelling units per acre. As we observed, Northpeak proposed to dedicate the 30–acre parcel as a park and leave it undeveloped but to transfer from it to the southeastern tract the higher dwelling density allowed by the R–S zone. That, it contended, would allow development of the southeastern tract to the allowable maximum of 2.6 units per acre and yet preserve the 30–acre parcel as parkland.

Because the Zoning Hearing Examiner is required to consider the recommendation of the Planning Board and of any

municipalities having operational responsibilities with respect to the property, one might expect that, in the normal course, the hearing before the Examiner would await the conclusion of proceedings by those entities. In this case, due to a time constraint to which we shall shortly allude, that procedure was not followed exactly. The hearing before the Examiner was scheduled for March 2, 1994. The Technical Staff filed its report on February 1, 1994. The City of Bowie did not transmit its recommendations until March 1, and the Planning Board did not hold its hearing and make its recommendation until March 10, 1994.

The Technical Staff report was extensive; it commented on the proposal, the requirements for approval, and the responses received from various public agencies. The Report recommended approval of the two applications, subject to certain stated conditions. Among the conditions attached to the approval of Application No. A–9900 were (1) that the entire 30–acre tract be dedicated to the Maryland–National Capital Park and Planning Commission for public park use in accordance with the recommendations of the Bowie–Collington Master Plan, and (2) that development on the remaining 65 acres be limited to 200, rather than 235, attached single-family homes. Among the conditions proposed with respect to Application No. A–9901 were that development not exceed 20 single-family attached homes, 15,000 square feet of retail use, and 10,000 square feet of day care use. Attached as a proposed condition to the approval of both applications was that, prior to Comprehensive Design Plan approval and the issuance of building permits, certain road, intersection, and traffic design improvements be made. With those conditions, the Technical Staff was satisfied that the applications met the requirements for approval.

On March 1, 1994, the City of Bowie sent its recommendations with respect to the applications, along with three memoranda from the City Manager to the City Council, to the Zoning Hearing Examiner. Noting that it had conducted three public hearings on the two applications, the City recommended disapproval of Application No. A–9900 if it included

the 30–acre parcel in the northwest quadrant but approval, subject to certain conditions, if that parcel were excluded, and approval, subject to certain conditions, of Application No. A–9901. Among the conditions attached to No. A–9901 was that the convenience center be limited to 15,000 square feet and that it contain within it a day care center. The City's concern with No. A–9900 was principally that the 30–acre parcel remain as open space and be dedicated to a public agency, which, as noted, was a condition listed by the Technical Staff.

Immediately after the hearing on March 10, the Planning Board adopted Resolutions consistent with the Technical Staff's recommendations. In the Resolution identified as PGCPB No. 94–71, it recommended approval of Application No. A–9900, subject to the conditions stated therein, thus allowing development of 200 single-family attached homes. In Resolution PGCPB No. 94–72, it recommended approval of Application No. A–9901, subject to the conditions stated in that Resolution.

As we indicated, the decision of the Zoning Hearing Examiner must await action by the Planning Board, whose recommendation is entitled to consideration. Section 27–129(j) allows the Planning Board to request that the record before the Examiner remain open for up to 14 days for receipt of its recommendation. More significantly, for purposes of this case, § 27–187(a) requires that, at least 30 days before the Examiner's hearing, the Planning Board must send to the District Council (and thus to the Zoning Hearing Examiner) "the original copy of the application, plans, maps, specifications, Technical Staff Report, and all other data, materials, and record evidence (to date) pertaining to the requested Map Amendment...." Section 27–187(b) requires that the original Map Amendment application file be available for public examination in the Office of the Zoning Hearing Examiner and that a copy of it be available for public examination in the Office of the Planning Board at least 30 days prior to the hearing.

We are informed, without citation to any statutory basis, that the District Council is "required" to cease hearing zoning

cases immediately prior to a general election, which, in 1994, would have required a moratorium after October 31, 1994, but that, on its own initiative, the Council had extended that moratorium to the spring immediately preceding a general election. Under the extended moratorium, the District Council determined not to hear any zoning case after May 23, 1994. In light of the time sequences for filing exceptions from the Zoning Hearing Examiner's decision and setting a hearing before the District Council, that meant, as a practical matter, that the Zoning Hearing Examiner would have been required to file his decision in the matters by April 1, 1994.[4]

The hearing before the Zoning Hearing Examiner was advertised and scheduled for March 2, 1994. The Planning Board, of course, had not yet held its hearing or formulated its recommendation. Moreover, because February had only 28 days, the Technical Staff Report, which was filed on February 1, 1994, had not been in the Zoning Hearing Examiner's file for a full 30 days, as required by § 27–187(a)(1). More significantly, there was apparently a blizzard of some kind on March 2, causing a number of county offices to be closed or operated with only emergency crews, and, because of that, the Zoning Hearing Examiner decided to do no more than place certain documents into evidence and then continue the hearing to March 17, to allow interested persons an opportunity to appear. That continuance resolved the problem with respect to the Technical Staff Report. It also alleviated the problem arising from the fact that counsel for petitioners, Mr. Dernoga, had only recently been retained.

When the hearing resumed on March 17, testimony was presented concerning the Basic Plan, which had been amended in a number of respects, and with respect to the Traffic Study,

---

4. This assertion by petitioners is not challenged by respondents, so we accept it. There is, in the record, a Memorandum dated September 22, 1993 from the Chairperson of the Council to the Council members stating that "[i]n keeping with past practice in Election years," there would be no District Council actions after May 23, 1994 and that the "cutoff date" for zoning map amendment matters in which oral argument was anticipated was April 1.

comments received from the various public agencies, and a market analysis and engineering study showing that the project was feasible from both an economic and engineering perspective. Mr. Dernoga raised several objections during that hearing to the fact that copies of the Basic Plan and the Traffic Study had not been in the Zoning Hearing Examiner's file during the 30–day period preceding the hearing, a matter we shall address later in this Opinion. The case was not completed on the 17th, so a final day of hearing occurred on March 21, 1994. That hearing was devoted principally to testimony from petitioners and other opponents of the project.

The Zoning Hearing Examiner filed his decision on March 29, 1994, in the form of a 35–page document covering both applications. The Examiner noted at the beginning the difficulties caused by the time constraint arising from the District Council's election year moratorium and made clear that, but for the need for haste, he would have referred the matter back to the Planning Board Staff for further consideration. On the other hand, he expressed his confidence that "the recommendation herein is sound and supported by the record." Much of the decision was taken up with long quotations from recommendations of the City of Bowie and the Technical Staff. The Examiner's ultimate conclusion was that R–S zoning should be denied with respect to the northwestern 30–acre tract, that it should be granted with respect to the 65–acre tract subject to certain stated conditions, and that the four-acre tract should be rezoned to L–A–C, subject to stated conditions. Under the Examiner's recommendation, 162 dwelling units would be authorized on the 65–acre tract, of which at least 11 would have to be detached dwellings.[5] An accompanying notice informed persons of record of their right to file exceptions and request oral argument before the District Council.

---

5. The principal reason for the reduction in the number of allowable dwellings was the proposed retention of R–A zoning for the 30–acre northwestern tract. Rezoning of that tract to R–S would have allowed the transfer of 41 dwelling units to the 65–acre tract.

Neither side was entirely happy with the Zoning Hearing Examiner's recommendations, and both filed exceptions. Northpeak objected only to the proposed disallowance of rezoning of the 30–acre parcel, but it later acquiesced in that proposal and, on May 17, 1994, withdrew its exceptions. Through Mr. Dernoga, petitioners complained (1) that the Examiner commenced the hearing on March 2 in contravention of § 27–185(b), continued the hearing to March 17 without the notice required by § 27–186(a), and improperly failed to continue the March 17 hearing when it appeared that the Basic Plan and Northpeak's Traffic Study were not in the Zoning Hearing Examiner's file, as required by § 27–187, (2) that the impending moratorium did not permit the Examiner time to conduct a fair hearing, to remand the application to the Technical Staff, or to write legally sufficient findings of fact and conclusions of law, and (3) that Northpeak failed to demonstrate that the development conformed to the Master Plan, was economically justified, and was compatible with surrounding land uses.

The District Council heard oral argument on petitioners' exceptions on May 18, 1994. On May 23, it enacted separate ordinances effectively adopting the recommendations of the Zoning Hearing Examiner. In Zoning Ordinance No. 27–1994, the Council amended the Regional District Zoning Map by rezoning the 65–acre southeastern tract from R–R and R–A to R–S, subject to the conditions recommended by the Examiner. In Zoning Ordinance No. 28–1994, it amended the Zoning Map by rezoning the four-acre tract from R–R to L–A–C, subject to the conditions recommended by the Examiner. On June 17, 1994, the Council adopted two additional ordinances, one with respect to each application, recording that Northpeak had duly consented in writing to the respective conditions, incorporating those consents into the Zoning Map amendments, and granting final conditional zoning approval. A separate notice of each ordinance, which was declared effective as of June 17, was sent to persons of record on June 22, 1994.

On July 22, 1994—the last day allowed for doing so— petitioners filed a petition for review in the Circuit Court for Prince George's County. The caption of the pleading identified the agency as the County Council of Prince George's County, sitting as the District Council, but did not identify the case or the District Council case number. The introductory paragraph of the petition stated that judicial review was sought "of the decision of the County Council of Prince George's County, Maryland, Sitting as the District Council, Appellee, in the case of ZMA Nos. A–9901 . . . ." The petition recited that petitioners were parties to the proceedings before the District Council "on this matter" and that they were aggrieved by "the action" of the District Council. Pursuant to that petition, the District Council, on August 1, 1994, gave notice to all persons of record—52 persons in all—that petitioners had filed a petition for review "of the District Council's approval of Zoning Map Amendment Application No. A–9901." On the same day, it filed a response to the petition, stating that it intended to participate in the proceeding. On August 15, the court scheduled the case for argument on October 21, 1994. The record pertaining to Application No. A–9901 was filed with the court on September 20, 1994.

On October 18, 1994—three days before the scheduled hearing—petitioners filed a Motion To Correct Petition And Record, in which they averred that, due to a clerical error, they had filed "an incorrectly captioned Petition for Review of ZMA Nos. A–9900 and A–9901." The caption of the motion included the words, omitted from the Petition for Review, "IN THE CASE OF ZMA NOS. A–9900 AND A–9901." Petitioners recited that the Basic Plan submitted by Northpeak encompassed both applications, that the Technical Staff Report covered both, and that both the Planning Board and the Zoning Hearing Examiner had conducted "joint evidentiary hearings" and rendered one decision covering both applications. They noted that, of the exceptions they had filed, four related to the hearings conducted on both applications, two related specifically to Application No. A–9900, and one related only to Application No. A–9901. They acknowledged that,

although a joint hearing was conducted by the District Council, separate approvals were issued for each application.

Through counsel, petitioners explained that the petition was drafted by counsel on July 21, 1994 on his home office computer, that, because he had no printer at home, the WordPerfect document was converted to a "text" document and faxed to counsel's Annapolis office, so that it could be retyped, printed, and delivered to court by its due date—July 22. Petitioners stated that the original document drafted by counsel included the case numbers A–9900 and A–9901, but that, in the retyping, the reference to A–9900 was dropped due to a clerical error. They contended that, through a telephone conversation on July 21, counsel for Northpeak was aware that the petition was intended to cover both applications but that petitioners remained unaware of the clerical error. Asserting that no prejudice ensued from the error, they asked that the court "[c]orrect" the petition for review "to clarify that it applies to both ZMA Nos. A–9900 and A–9901" and that it order that the record be filed in ZMA No. 9900.

The District Council and Northpeak objected to petitioners' attempt to expand their petition for review to include No. A–9900. First, on October 26, they moved to strike the motion. On November 2, they moved to dismiss the "appeal" in No. A–9900 as untimely and, in a separate paper, also filed an Opposition to petitioners' motion. In their motion to strike and in an accompanying memorandum, they contended that the "appeal" had been noted only from the adoption of ZMA No. A–9901, that the time had expired for noting an "appeal" from No. A–9900, and that the court had no "jurisdiction" to add No. A–9900 to the caption or to entertain a petition for review in that matter. Reciting some of the legislative history behind Maryland Rule 7–203, they urged that the 30–day period allowed for filing a petition for judicial review was in the nature of an absolute statute of limitations and that the court no longer had the authority it possessed under former Rule B5 to enlarge the time.

This new development caused the scheduled hearing to be postponed. On December 23, 1994, the court granted petition-ers' motion and denied the motion to strike as moot. In its remarks from the bench, the court found that there had been a clerical mistake in the typing of the petition, that there had been "substantial compliance" in that the two applications had always been treated together, and that there had been no prejudice to the respondents.

Although petitioners won the procedural battle, they ulti-mately lost on the merits, in the circuit court. Five issues were presented to the court: whether the District Council provided sufficient specific findings of fact and conclusions of law in its two decisions, whether the Council erred in not remanding the case to the Zoning Hearing Examiner because the Basic Plan and the Traffic Study were missing from his file, whether there was substantial evidence in the record that the project would satisfy the conditions of § 27–195(b) of the county zoning law (Criteria for Approval), whether the Council erred in not remanding the case when the applicant amended its application, and whether the zoning process deprived peti-tioners of due process of law. After a further hearing on April 12, 1995, the court rejected petitioner's arguments and affirmed the decisions of the District Council.

On appeal by petitioners, the Court of Special Appeals concluded (1) that petitioners had failed to file a timely petition for judicial review of the Council's approval of Appli-cation No. A–9900, that, accordingly, the circuit court had erred in granting petitioners' motion to amend the petition for review to encompass that application, and that all other issues pertaining to that application were therefore moot, (2) that the District Council's decision approving Application No. A–9901 lacked specific findings of fact and conclusions of law, and (3) that the other complaints as to Application No. A–9901, includ-ing the complaint that the District Council should have re-manded the matters to the Zoning Hearing Examiner because of the missing documents from his file, were either without merit or were moot. Although the mandate of the court states that the judgment of the circuit court was affirmed in part and

reversed and remanded in part, it appears from the last part of the opinion that, for different reasons, the judgments were reversed in their entirety. As to the judgment entered on Application No. A–9900, the appellate court declared that it was remanding with instructions to dismiss the petition for review; the judgment entered on Application No. A–9901 was reversed, and the case was remanded for further remand to the District Council "for a decision comporting with the legal principles explained herein." *Colao v. Prince George's County, supra,* 109 Md.App. at 474–75, 675 A.2d at 170.

We granted petitioners' petition for *certiorari* to consider the two questions presented therein: whether the Court of Special Appeals erred in concluding (1) that a timely petition for review was not filed with respect to Application A–9900, and (2) that the District Council was not obliged to remand the case to the Zoning Hearing Examiner because of the missing documents.

## II. *DISCUSSION*

### A. Timeliness of Petition as to No. A–9900

Petitioners' argument that their petition for review of Application No. A–9900 was timely is based, at its core, on the assertion that the omission of the petition filed on July 22, 1994 to refer to that application, being the product of a secretary's typographical mistake, constituted a "clerical error." From that, petitioners offer two alternative theories for sustaining the circuit court's action. First, they suggest that the court should have looked to what they regard as the "correct petition for review"—the one typed by counsel on his home computer that contained a reference to both applications—rather than the "erroneous petition for review"—the one that was actually filed—as the effective petition, and, if that were done, the petition would clearly be timely as to both applications. That theory, of course, would give effect to a draft document that was never filed and was never intended to be filed rather than the document that was, in fact, filed and that served to set in motion the notice to persons of record

and the filing of the administrative record. We know of no authority, and no reasonable basis, for such an approach, which could engender a great deal of mischief and uncertainty.

The second theory is that, given that the two applications dealt with the same proposed development and were treated together throughout the administrative process, coupled with the fact that petitioners *intended* to seek judicial review of the granting of both, the initial petition should be read in that manner and, despite the actual omission of any reference to No. A–9900, be regarded as including the decision on that application in substantial compliance with the requirements of Rules 7–202 and 7–203. Substantial compliance, they aver, should suffice. Quoting from *Town of Somerset v. Board,* 245 Md. 52, 61, 225 A.2d 294, 299–300 (1966), they argue that, when there is compliance with the substance of governing requirements and other parties have not been prejudiced, "technical irregularities," such as the unintended omission to include a reference to No. A–9900, should not serve to deprive persons of the opportunity to assert their legal rights. The circuit court, they urge, had discretion under Md. Rule 2–341 to allow amendments to the petition, and, finding the omission merely a technical or clerical error, it properly exercised that discretion. The Court of Special Appeals, they aver, erred in substituting its judgment for that of the circuit court.

Prior to July 1, 1993, petitions for judicial review of administrative agency decisions, including review of zoning map amendments made by the District Council, were governed by Chapter 1100, Subtitle B of the Maryland Rules. Although actions for judicial review of Executive Branch agency decisions, in a jurisprudential sense, always, and necessarily, involved the exercise of the circuit court's original jurisdiction, the former rules erroneously and misleadingly referred to them as "appeals," and that is how they were popularly regarded.[6] *See Gisriel v. Board,* 345 Md. 477, 495–96, 693

---

6. The mischaracterizing of these actions as appeals has deep roots. Initially, it was the Legislature that referred to them as appeals. *See, for example,* Maryland Code (1957), Article 2B, §§ 42, 175, and 176

A.2d 757, 766 (1997), *recons. denied,* June 9, 1997; *Department v. Harmans,* 98 Md.App. 535, 542 n. 2, 633 A.2d 939, 943 n. 2 (1993). In relevant part, Rule B4a required, as a condition to obtaining judicial review, that an "order for appeal" be filed within 30 days after the date of the action appealed from, but Rule B4b allowed the court, upon application and "for sufficient cause shown," to reduce that time or to extend it for not more than 60 days. Rule B5 provided that, if the "appellant" failed to file an order of appeal within the time prescribed by Rule B4, the court "shall dismiss the appeal *unless cause to the contrary be shown."* (Emphasis added). *See Volk v. Pugatch,* 262 Md. 80, 277 A.2d 17 (1971).

Under that former scheme, there was some ambiguity, even an anomaly, as to the nature of the 30-day requirement. Because of the nomenclature designating these actions as "appeals," the time requirement was not recognized as being in the nature of a statute of limitations, which applies to the filing of initial actions. On the other hand, the ability of the court to extend the time prescribed in the rule suggested that the requirement was not a purely jurisdictional one, as the time requirement for noting appeals to the appellate courts was regarded, for a court has no authority to expand its own jurisdiction by decisional fiat. *See Hancock v. Stull,* 199 Md. 434, 437, 86 A.2d 734, 735 (1952) (neither a circuit court nor the appellate court can extend the time for appeal); *see also Cornwell v. State,* 1 Md.App. 576, 577–78, 232 A.2d 281, 282 (no provision in Rules authorizing lower courts to extend time

---

(decisions of liquor license boards); Article 5, §§ 27 through 29 (decisions of county commissioners); Article 25A, § 5(U) (decisions of county boards of appeals); Article 33, § 46 (decisions of election boards). The first rules adopted by this Court dealing with these actions continued that verbiage. *See* Md. Rule 1101 (1957). That early rule was captioned "Appeals from Administrative Agencies" and stated explicitly that "[a]n application for a review is hereinafter referred to as an appeal." The "appeal" was commenced by the filing of an "order for appeal," which was to be accompanied, or followed within 10 days, by a petition setting forth the action appealed from, the error allegedly committed by the agency, and the relief sought. That nomenclature and formulation remained intact until replaced, effective July 1, 1993, by the adoption of the Title 7 Rules. *See* former Rules B1 and B2.

to file order for an appeal), *cert. denied,* 247 Md. 739 (1967). The case law never addressed the matter, but instead simply applied the rules as written and confirmed the authority of a circuit court to extend the time for filing an order for appeal and petition, upon proper application, and to decline to dismiss an action for an untimely filing upon a showing of good cause for the delay. *See Merrimack Park v. County Board,* 228 Md. 184, 187–88, 179 A.2d 345, 347–48 (1962) (good cause for delay established); *Town of Somerset, supra,* 245 Md. at 61, 225 A.2d at 299–300 (substantial compliance will suffice); *Board of Co. Comm'rs v. Kines,* 239 Md. 119, 125, 210 A.2d 367, 370–71 (1965) (same); *Border v. Grooms,* 267 Md. 100, 106, 297 A.2d 81, 84 (1972) (same); *compare Warmack v. Bradley Club,* 242 Md. 394, 398, 219 A.2d 12, 14–15 (1966) (good cause not shown); *Volk v. Pugatch, supra,* 262 Md. at 81–83, 277 A.2d at 18–19 (same); *Salisbury Bd. v. Bounds,* 240 Md. 547, 553, 214 A.2d 810, 814 (1965) (no good cause shown); *Francois v. Alberti Van & Stg. Co.,* 285 Md. 663, 670–73, 404 A.2d 1058, 1062–64 (1979) (same). Under that approach, the reason why an order for appeal or petition was late was clearly relevant; indeed, the reason was critical to a determination of whether good cause had been shown either to extend the time for the filing or to refrain from dismissing the action because of a late filing. A mere "clerical error" causing no prejudice to other parties might well suffice as good cause to extend the time for up to an additional 60 days or to refrain from dismissing an action if the order or petition was not timely filed.

In adopting the Title 7, Chapter 200 rules in 1993, this Court abandoned the earlier approach and its accompanying nomenclature and made the procedure consistent with the true nature of these kinds of actions. Gone are references to "administrative appeals"; like *res gestae,* that phrase, in the context of judicial actions, is now an anachronism. The Chapter 200 rules are captioned "Judicial Review of Administrative Agency Decisions." The change was not just a semantic one. In keeping with the recognition that these actions invoke the original jurisdiction of the circuit courts, the Court (1) in Rule 7–202(a), directed that the action be commenced by the filing

of a petition for judicial review, rather than the two documents—the order for appeal and petition—previously required, and (2) in Rule 7–203, abrogated the authority of the circuit court to shorten or extend the 30–day period for filing the petition. We explained that abrogation in a Committee Note to Rule 7–203:

"The provisions of former Rule B4 concerning the shortening and extending of time are not carried forward. The time for initiating an action for judicial review is in the nature of a statute of limitations, which must be specifically raised either by preliminary motion under Rule 7–204 or in the answering memorandum filed pursuant to Rule 7–207."

In conformance with that Committee Note, we expressly provided, in Rule 7–204, that any person wishing to participate in the action could raise the issue of timeliness of filing either through a preliminary motion or through a response to the petition filed within 30 days after the mailing by the agency of notice of the petition. Indeed, in our discussion of the proposed new rules, we noted that, under our jurisprudence, it is incumbent on a defendant/respondent to raise limitations timely as an affirmative defense and that the failure to do so constitutes a waiver of that defense. *See* Md. Rule 2–323(g)(16); *Foos v. Steinberg*, 247 Md. 35, 37–38, 230 A.2d 79, 80 (1967); *Brendel v. Strobel*, 25 Md. 395, 400 (1866); *Bagwell v. Peninsula Regional Medical*, 106 Md.App. 470, 508, 665 A.2d 297, 316 (1995), *cert. denied*, 341 Md. 172, 669 A.2d 1360 (1996). In this case, respondents timely raised the defense in their responses to petitioners' motion.

Under this new approach, although the doctrine of substantial compliance may well continue to apply to other procedural requirements, untimely filings of petitions for judicial review are no longer governed by findings of good or sufficient cause or by the exercise of the court's discretion, but rather by the law relating to statutes of limitations. A precept of that law, to which we have long adhered, is that, "where the legislature [or in the case of a rule, this Court] has not expressly provided for an exception in a statute of

limitations, the court will not allow any implied or equitable exception to be engrafted upon it." *Booth Glass Co. v. Huntingfield Corp.,* 304 Md. 615, 623, 500 A.2d 641, 645 (1985) (citations omitted). A late filing, beyond the period of limitations, of a petition for judicial review cannot be sustained simply because the late filing was the result of a "clerical error" on the part of a petitioner, an attorney for the petitioner, or a secretary to the attorney for a petitioner. Nor can a barred filing be accomplished by amending an existing pleading. An amendment to a complaint or petition filed after the expiration of a statute of limitations will be barred to the extent it purports to state a new cause of action. *Morrell v. Williams,* 279 Md. 497, 506, 366 A.2d 1040, 1044–45 (1976) (citations omitted). Thus, just as a complaint for breach of contract cannot be amended to include a count for defamation after the running of limitations, upon an assertion that the plaintiff always intended to include such a count, or that an unfiled prior draft of the complaint actually included such a count which was omitted during the typing of the complaint actually filed, neither can a petition for judicial review of one agency decision be amended after the running of limitations to seek review of an entirely separate decision.

█ As petitioners recognize, although the two applications were considered together by the Planning Board, the Zoning Hearing Examiner, and the District Council, they were, and were required to be, separate applications, each standing on its own, and the final approval by the District Council came in the form of separate ordinances. Judicial review of the decision of the Council in No. A–9900 was not sought in the July 22 petition. The time allowed for seeking review of that decision expired on July 22, and the District Council and Northpeak timely raised the limitations defense in their motion to strike and response. Consequently, the Court of Special Appeals correctly concluded that the circuit court erred in allowing the petition to be amended to include No. A–9900. The circuit court should have denied the motion to amend and treated the petition as seeking review only of the decision in No. A–9901.

Lest this result seem harsh or unfair, it is worth remembering that one of the important goals of the new procedure was to make the judicial review process more efficient. The basic battle in these cases is fought at the agency level. Whether acting under an administrative procedures act or under common law principles, the court's role is essentially limited to assuring that the agency acted lawfully, that there was substantial evidence to support its finding, and that it was not arbitrary. This Court was concerned that these cases, having already been through an often exhaustive administrative process, not linger unnecessarily in the court system. Making the 30-day requirement for filing the petition in the nature of an absolute statute of limitations, subject to waiver by failure of a respondent to raise the defense in a proper manner but not subject to discretionary extension, was in furtherance of that objective, as was the requirement of Rule 7–202(b) that the petition, in its caption, identify the agency and the particular decision of which review is sought. That information triggers the ensuing obligations of the court clerk under Rule 7–202(d) to send a copy of the petition to the agency, and of the agency then (1) to identify the case, (2) to give prompt written notice to all persons who were parties before the agency of the filing of the petition and of the time within which a response must be filed, and (3) to file the agency record with the court within 60 days. *See* Rules 7–204(d) and 7–206(c).

The petition for review filed by petitioners on July 22, 1994 identified the District Council as the relevant agency but did not, in its caption, indicate the agency case number. That omission, of itself, constituted a violation of Rule 7–202(b), which, by using the word "shall," requires that the caption include the agency case number. Had that case number been stated in the body of the petition, in a manner in which it could clearly and conveniently have been ascertained by the court clerk, its omission from the caption would not necessarily have been fatal. In that circumstance, the deficiency could indeed have been regarded as a "technical" and nonprejudicial irregularity, not affecting in any material way the orderly

processing of the case, and the petition could properly have been declared in sufficient and substantial compliance with the rule.

The problem here, of course, was compounded by the fact that the introductory paragraph of the petition identified the agency decision of which review was sought as "the case of ZMA Nos. A–9901." There was nothing, anywhere in the petition, to indicate that review was also being sought of the decision in No. A–9900. The court clerk overlooked the omission in the caption and sent a copy of the petition to the District Council. Acting on the only reference made in the petition, the Council informed the persons who were parties before it that a petition for review had been filed only with respect to Application No. A–9901. As we indicated, notices were mailed to 52 persons. Only the record in No. A–9901 was filed with the court. Both the court clerk and the District Council thus gave petitioners the benefit of substantial compliance by overlooking the technical deficiency and processing the petition in accordance with the information supplied in it.

Until the motion to amend the petition was filed on October 18, 1994, there was no basis for the District Council, Northpeak, the City of Bowie, or anyone else (other than petitioners and their attorney) to suppose that the decision in No. A–9900 was being challenged. A hearing on the petition had been scheduled for October 21, 1994. Allowance of the amendment should have triggered additional notices to the 52 persons of record, who had been informed only of the petition challenging the decision in No. A–9901, although there is no indication in the record that any additional notices were sent. What the allowance did do was to extend the judicial proceeding for an additional six months. In the grand balance of competing interests, the result we reach is not unduly harsh.

### B. The Missing Documents

The second complaint, which is pursued in this Court by only one of the petitioners—Mr. Senecal—is that the District Council should have remanded the two matters to the Zoning Hearing Examiner because two documents—the Basic

Plan and Northpeak's Traffic Study—were not in the Examiner's file during the 30-day period preceding the hearing before the Examiner. We shall recite the relevant facts underlying the argument but, in the end, conclude that, in this case, it is essentially a tempest in a teapot.

As we indicated, § 27-187 of the county zoning law requires that (1) at least 30 days prior to the public hearing before the Zoning Hearing Examiner, the Planning Board send the original copy of the application, plans, maps, specifications, Technical Staff Report, and all other data, materials, and record evidence pertaining to the proposed zoning map amendment to the District Council, and (2) at least 30 days before the hearing the original map amendment application file be available for public examination in the office of the Zoning Hearing Examiner and a copy of the file be available for public examination in the office of the Planning Board.

As noted, the hearing before the Zoning Hearing Examiner was scheduled for, and actually commenced on, March 2, 1994. The Planning Board had not yet held its hearing and, apparently, did not send to the District Council (or the Zoning Hearing Examiner) the two documents in question, as the ordinance requires. The problem surfaced initially at the March 2 hearing when, through various witnesses, a number of documents, including the Basic Plan map, were identified and offered into evidence. The Examiner asked whether Northpeak had any amendments to its Basic Plan, to which counsel indicated that it had one. He offered the original and the amended Basic Plan but said that he had only one copy of the amended plan. The Examiner directed Northpeak's attorney to give one copy of the plan to Mr. Dernoga, which apparently he did, and another copy to the representative of the City of Bowie. The gentleman from Bowie said that a copy of the Basic Plan map, showing everything but a minor change, was attached to a memorandum from the Bowie City Manager, *which had just been admitted as Exhibit J-4(c)*. The hearing then adjourned until March 17, the Examiner informing everyone that they could come to his office any time during business hours and look at the files.

When the hearing resumed on March 17, the Planning Board Resolutions were admitted into evidence. As Northpeak's attorney began to examine the witness who prepared the Basic Plan, the Zoning Hearing Examiner noted that a copy of the plan *text* was not then in his file.[7]  Some members of the audience indicated that they had copies of the plan, although others apparently did not.  Mr. Dernoga noted that the absence of the plan from the Zoning Hearing Examiner's file might be a violation of the ordinance and said that he intended, during a recess, to check the ordinance "as to whether that's a problem."  If it were, he said, he might "then maybe raise the point a little more strenuously at that point."  He had no objection to proceeding, however, and, accordingly, copies of the Basic Plan text and the Basic Plan map were admitted into evidence.

In fact, Mr. Dernoga raised the issue twice more.  The first time, he objected to inclusion of the Basic Plan, which was already in evidence, on the ground that it was not "in the record properly...."  That objection was overruled.  The second time, when the Traffic Study was offered, his complaint went to both the Basic Plan and the Traffic Study, which, he correctly noted, were supposed to be in the Examiner's file at least 30 days before the hearing.  Though regarding his objection as a "technical" one, he nonetheless complained that neither document was in the file until that day.  Counsel for Northpeak responded that sufficient copies of both documents had been supplied to the Planning Board—that "[t]hrough some oversight, they may not have gotten into your file, but the applicant submitted them and they were certainly available to the public ... through the Park and Planning Commission at all times as defined in this application."  Mrs. Senecal,

---

7.  There is some confusion as to exactly what was in the Examiner's file. It appears that there was a Basic Plan map and a Basic Plan text and that it was the latter that was missing from the Examiner's file on March 17.  As we indicated, at the March 2 hearing, the representative from the City of Bowie mentioned that a copy of the Basic Plan map was attached to a memorandum from the City Manager that had already been marked as an exhibit and admitted into evidence.

the wife of one of the petitioners, then informed the Examiner that her husband had called "the County" about the Basic Plan and was told that it was not in the file for either No. A–9900 or A–9901. The Examiner said that he would allow testimony on that point later. In fact, Mr. Senecal testified at the March 21 hearing that he had called the Zoning Hearing Examiner's Office on March 10, spoken with a woman whose name he could not recall, and was told that she "had the file in front of her [and] didn't see anything that she thought would really show me the plan of development for this property." Mr. Senecal conceded that he did not come himself to the Examiner's office to examine the file; he was not asked and did not volunteer whether he made any other attempt to see or obtain the plan or whether or how he was prejudiced by its omission from the Examiner's file. He presented his objections to the plan, as other protestants had done, and then said nothing more.

To put this issue in its proper perspective, we accept the unchallenged statements made before the circuit court and in the parties' respective briefs that (1) the original copy of the Basic Plan text was not in the Zoning Hearing Examiner's file prior to March 17, as required by § 27–187; (2) it, along with all other relevant documents, was in the Planning Board's file and could have been accessed there; (3) Northpeak did everything required of it; (4) the problem arose from the Planning Board's failure to comply with its obligation to forward the Basic Plan and the Traffic Study to the District Council within the time specified—a problem that may have resulted from the fact that the Planning Board did not hold its hearing until March 10, 1994; (5) petitioner Colao was given a copy of the Basic Plan text on or about February 25, 1994, and he gave it to Mr. Dernoga, who had it by March 2; (6) at that time, Mr. Senecal was not being represented by Mr. Dernoga; and (7) Mr. Senecal is the only petitioner now challenging the improper procedure.

From all of this, the issue, now being raised only by Mr. Senecal, is whether, on this record, the circuit court erred in summarily concluding that the District Council was not re-

quired to remand the two matters to the Examiner for some further proceeding because the original copy of the Basic Plan and Traffic Study was not sent to the District Council at least 30 days prior to March 21, 1994 and were not available for public examination in the Zoning Hearing Examiner's file during that 30-day period.

The Court of Special Appeals found no error on the ground that there was utterly no prejudice to Mr. Senecal from the violation of the ordinance, and we shall affirm on that basis. Apart from the fact that § 27-187 also requires that copies of the documents be made available by the Planning Board and they *were*, in fact, available at the Planning Board, a copy of the revised Basic Plan map was apparently in the Zoning Hearing Examiner's file by March 10, when Mr. Senecal called. It had been placed into evidence as part of the Bowie City Manager's memorandum. Mr. Dernoga had been in possession of the Basic Plan text since late February, and, although he points out now that Mr. Senecal cannot be charged with that fact because he was not then being represented by Mr. Dernoga, we note that, at no time during the hearings before the Zoning Hearing Examiner did Mr. Senecal object to proceeding because of any missing documents. If, in his unrepresented status, Mr. Senecal cannot be charged with Mr. Dernoga's possession of the plan, neither can he claim the benefit of Mr. Dernoga's objections.

We do not condone the manner in which these proceedings were conducted. In order to meet the arbitrary deadline set by the County Council, the orderly process envisioned by the County Code was virtually ignored, and all of the participants, including the Zoning Hearing Examiner, were put under a great deal of pressure. Had the March 2 hearing not been cut short by bad weather, thereby forcing additional hearings on March 17 and 21, some very serious procedural problems would have arisen. That said, however, it is clear that the omission complained of was of no consequence and certainly did not prejudice Mr. Senecal.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; PETITIONERS TO PAY THE COSTS.