761 A.2d 935

**Erin Jones WOLFE**

v.

**ANNE ARUNDEL COUNTY, Maryland.**

**No. 2079, Sept. Term, 1999.**

Court of Special Appeals of Maryland.

Sept. 29, 2000.

Reconsideration Denied Dec. 7, 2000.

2

William F. Gately (Howell & Gately, on the brief), Towson, for appellant.

David A. Plymyer, Deputy County Atty. (Linda M. Schuett, County Attorney, on the brief), Annapolis, for appellee.

Argued before MOYLAN, EYLER and KENNEY, JJ.

MOYLAN, Judge.

Erin Jones Wolfe, the appellant, challenges a ruling of the Circuit Court for Anne Arundel County, Judge Eugene M. Lerner presiding, whereby the court granted Motions for Summary Judgment in favor of Anne Arundel County, the appellee, on all three counts of the claim filed against it. On appeal Ms. Wolfe claims that the circuit court improperly granted those motions. The County raises one issue by way of cross-appeal, to wit, that two counts of the claim against it were barred by *res judicata* or collateral estoppel.

## Background

In March of 1993, Ms. Wolfe initiated a lawsuit in the Circuit Court against (1) Michael D. Ziegler, an Anne Arundel County police officer; (2) Anne Arundel County ("the County"); and (3) various officials of the County Police Depart-

ment. The suit sought damages for battery and for a violation of Ms. Wolfe's federal civil rights. It stemmed from an incident which occurred at approximately 2:00 a.m. on November 15, 1990, when Ziegler, while in uniform and on duty, pulled Ms. Wolfe over for a routine traffic stop and thereafter forcibly raped her.

The County had the suit removed to the United States District Court for the District of Maryland. The suit was then bifurcated, with the claims against Ziegler being tried first before the trial of the claims against the County and its officials. Ziegler requested that the County, which is self-insured, provide him with funding for a legal defense. Accordingly, the County, with a reservation of rights, provided Ziegler his requested defense. In a letter sent to Ziegler on March 29, 1993, counsel for the County wrote in relevant part:

> We are reserving our right to later disclaim any obligation under the insurance coverage and the Local Government Tort Claims Act, and to assert a defense of no coverage because the actions alleged in the lawsuit, if proved, would constitute intentional wrongdoing and would constitute actions not within the scope of your employment with the Anne Arundel County Police Department[.]

The letter further instructed Ziegler to select his own defense counsel rather than to retain the same counsel as the County, because of the "potentially adverse interests between [Ziegler] and the County."

On September 21, 1994, a federal jury returned a verdict in favor of Ms. Wolfe and against Ziegler in the first phase of the case. Ms. Wolfe was awarded a total of $1,050,000 in damages plus costs, $650,000 of which was compensatory and $400,000 of which was punitive. Ziegler thereafter submitted a claim for indemnification to the Anne Arundel County Self–Insurance Fund Committee ("the Committee"). A hearing was held on May 10, 1995, and the Committee denied Ziegler's claim for indemnification on the ground that "the act which resulted in the jury's verdict was not within the scope of ... employment; that act, whether consensual or not, was the act of sexual

intercourse, which hardly can be described as incident to [Ziegler's] duties as a police officer." Ziegler appealed the Committee's decision to the Anne Arundel County Board of Appeals which, after considering the claim *de novo,* affirmed the Committee's decision in all aspects on January 31, 1996.

In the second phase of the bifurcated proceedings against the County and its officials, in September of 1994 the District Court granted summary judgment in favor of the remaining defendants on all counts.

### The Instant Case

In November of 1997 Ms. Wolfe filed an action for declaratory relief against the County in the Circuit Court for Anne Arundel County. Shortly thereafter, Ziegler assigned to Ms. Wolfe any and all causes of action he might have had against the County arising out of the County's refusal to provide him with indemnification. Ms. Wolfe then filed an "Amended Complaint and Claim for Declaratory Judgment," in which she sought relief under three separate counts. Those counts were:

I. A declaratory judgment that Ms. Wolfe was legally entitled, pursuant to the Insurance Article of the Maryland Annotated Code, to indemnification benefits of the County's insurance policy;

II. That, as the assignee of Ziegler, Ms. Wolfe was entitled to judgment in her favor based on the County's having acted in bad faith and breaching its duties to Ziegler in refusing to "make any meaningful offer of settlement of the plaintiff's claims;" and

III. That, in encouraging Ziegler to proceed with a jury trial in federal court rather than settle the claim, the County was estopped from denying coverage to Ziegler and in turn to Ms. Wolfe, as Ziegler's assignee.

The County, in response, filed a "Motion to Dismiss or, Alternatively, for Summary Judgment" asserting various defenses to the suit.

Following a hearing, the circuit court issued an Order on August 3, 1998, which disposed of Counts II and III:

The Motion to Dismiss Counts II and III of the Amended Complaint on the ground that the allegations set forth in those Counts fail to state claims upon which relief can be granted is GRANTED, and summary judgment shall be entered in favor of Anne Arundel County as to Counts II and III.

Subsequently, both parties sought summary judgment as to the only remaining Count (Count I) of the Amended Complaint. After a hearing, the circuit court granted summary judgment in favor of the County. In a footnote to its October 8, 1999, Order the court explained:

This Court is bound by the settled law found in *Cox v. Prince George's County,* 296 Md. 162, 165, 460 A.2d 1038, 1039–40 (1983). Plaintiff in this action has not met the two-prong test in order to hold the County liable for the acts of Officer Ziegler. To explain, although Plaintiff has shown that at one time a master-servant relationship existed between the County and Officer Ziegler, *Plaintiff has not demonstrated "that the offending conduct occurred within the scope of the employment of the servant* or under the express or implied authorization of the master." *Cox,* 296 Md. at 165, 460 A.2d at 1039–40. For this reason, the Court must deny Plaintiff's motion for summary judgment. Finding that no material fact is in dispute and that Defendant is entitled to judgment as a matter of law, in accordance with Maryland Rule 2–501, *Defendant is hereby granted summary judgment as to Count I of the complaint.*

(Emphasis supplied). This timely appeal followed.

### The Motion for Summary Judgment

In reviewing a grant of summary judgment, an appellate court has the same information and decides the same issues of law as the trial court. It follows then that the proper standard for reviewing the granting of a sum-

mary judgment motion should be whether the trial court was legally correct.

*Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 590, 578 A.2d 1202 (1990); *Warner v. German,* 100 Md.App. 512, 516–17, 642 A.2d 239 (1994).

## Count 1:
### "Injured Person" Versus "Insured's Insurer"

The key issue in this case is the propriety of the grant of Summary Judgment in favor of the County on the first count of the Complaint. That count was brought by Ms. Wolfe in her own right against the County in its capacity as the alleged insurer of Ziegler. It was brought under Md.Code, *Insurance Article,* Sect. 19–102(b)(2), which provides, in pertinent part:

(b) *Bankruptcy or insolvency of insured.*—Each liability insurance policy issued in the State shall provide that:

(2) *if an injured person . . . is unable* after execution on a final judgment entered in an action against an insured, *to recover the full amount of the final judgment, the person may bring an action against the insured's insurer in accordance with the terms of the policy* for the lesser of the amount of the judgment recovered in the action against the injured or the amount of the policy.

(Emphasis supplied).

In the instant case, Ms. Wolfe obtained a judgment against the insured, *i.e.,* Ziegler, slightly in excess of $1 million. We are fully satisfied that under the standing guidelines articulated by Judge Eldridge in *Harford Mutual v. Woodfin,* 344 Md. 399, 411–14, 687 A.2d 652 (1997), this case was ripe for Ms. Wolfe to bring her claim against the County. Indeed, the County does not contest her standing to bring the action nor the ripeness of the claim, but is content to defend its position on the merits.

The County's position is that, under Sect. 19–102(b)(2), Ms. Wolfe is only entitled to recover "in accordance with the terms of the policy" and that, under the terms of the policy, there was no coverage for the tortious acts of Ziegler.

## The Source of the Coverage

The source of Ziegler's liability coverage is in the twin requirements of the Local Government Torts Claims Act, now codified as Maryland Code, Courts and Judicial Proceedings Article, Sects. 5–302 and 5–303, and in the implementation of those obligations by Anne Arundel County. There is the broad obligation on the County to defend and a narrower obligation to indemnify a county employee sued for a tortious act committed in the scope of his employment.

## The Duty to Defend

Section 5–302 of the Courts and Judicial Proceedings Article, entitled "Nature and extent of legal representation," provides in pertinent part:

(a) *Government to provide legal defense to employees.—* Each local government shall provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government.

*See Ennis v. Crenca,* 322 Md. 285, 291–92, 587 A.2d 485 (1991).

By way of implementing that obligation to defend, section 526(b) of the Anne Arundel County Charter ("Charter"), entitled "Powers and duties of the County Attorney," provides in relevant part:

(b) Subject to any limitation or exception that the County Council specifies by ordinance, the County Attorney shall defend any officer or employee of the County in any civil action brought against the officer or employee by reason of any act done or omitted to be done in the scope of the officer's or employee's employment. In any case defended by the County Attorney under this section, the County shall pay all court related expenses charged to the officer of employee.

There is no problem in this case with respect to the County's obligation to defend. Ziegler was sued for tortious conduct allegedly committed in the scope of his employment and

the County picked up the full cost of his defense. The duty to defend is triggered by the allegations in the Complaint.

### The Duty to Indemnify

The battleground in this case is the County's obligation to indemnify. That obligation depends on the scope of the coverage. It is the County's position that it is, by the express terms of the coverage, not the insurer for its employee's tortious acts generally but only for those tortious acts that are committed "within the scope of his employment."

Section 5–303 of the Courts and Judicial Proceedings Article explicitly sets forth the extent of the local government's responsibility for liability in a tort action:

(b) *When government liable.*—(1) Except as provided in subsection (c) of this section, a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee *within the scope of employment* with the local government....

(c) *Punitive damages; indemnification.*—(1) A local government may not be liable for punitive damages.

(Emphasis supplied).

As a self-insured jurisdiction, the County has, by ordinance, created a "Self–Insurance Fund." One of the attendant requirements is that the County adopt and enact a series of rules and regulations necessary for the operation of the Fund. *See* Anne Arundel County Code, Art. 2, § 5–104(d)(3). In its rules and regulations, the County's Self–Insurance Fund expressly defines the "Insured" who will receive general liability coverage.

### INSURED:

1. All ... employees ... of the County, ... *while acting within the scope of their duties* as such or on behalf of the County.

(Emphasis supplied). Those same rules and regulations also expressly spell out certain conduct by an employee which is "Excluded" from coverage:

## EXCLUSIONS:

\* \* \*

2. *Claims brought against an individual County employee* or individual otherwise insured *which are as a result of wilful actions or gross negligence on the part of that individual.*

\* \* \*

9. Punitive damages for or on behalf of any public official or employee of the County who is a defendant in a civil rights action.

(Emphasis supplied).

Article 13 of the Collective Bargaining Agreement entered into between the County and the Fraternal Order of Police also lists the specific insurance coverages available to County police officers. Section 13.6 provides:

### Civil Liability Coverage

County agrees to provide employees with legal defense services and with indemnification for civil liability in a fashion consistent with both Article 2, Title 5 (Self–Insurance Fund) of the County Code and the policies, rules and regulations of the self-insurance fund committee.

County agrees to provide employees with legal defense services and legal counsel without cost in any civil case where the plaintiff alleges that an officer should be held liable for *acts alleged to be within the scope of his/her employment and/or his/her official capacity.* Indemnification of compensatory damages will also be provided to any

member of the unit who is made a defendant in litigation arising out of *acts within the scope of his/her employment.* (Emphasis supplied).

### Officer Ziegler's Conduct And the Scope of His Employment

All of the preceding statutes predicate the entitlement to insurance coverage on the fact of the tortious acts' being done "within the scope of employment." The tortious conduct in question in this case is, of course, the conduct on which the federal judgment against Ziegler was based. That conduct was summarized in the opinion of the Fourth Circuit affirming the judgment. *Jones v. Wellham*, 104 F.3d 620, 622 (4th Cir.1997).

In the early morning of November 15, 1990, Officer Ziegler stopped a pickup truck driven by Ms. Jones, then age 23, on ostensible suspicion of driving while intoxicated. After questioning and observing Jones, Ziegler asked her to get into his police cruiser, told her that he would not arrest her, and said that he would drive her home. He did not, instead driving past the turnoff to her house and into a church parking lot. When Jones questioned him as to why he had gone past her house, Ziegler explained that he had to check something at the church.

Ziegler got out of the car at the church, and removed some of his clothing. According to Jones, when he returned to the car, he forcibly removed Jones' underwear and then forced her to have sex with him.

*Id.* at 622.

 That was the conduct on which the judgment against Ziegler was based. The conduct itself is no longer in issue. It was only because of her inability to collect the judgment against Ziegler directly that Ms. Wolfe has attempted, through § 19–102(b)(2) of the *Insurance Article,* to collect it from the County. In granting summary judgment on the first count in favor of the County, Judge Lerner ruled, as a matter of law, that Ziegler's raping of Ms. Wolfe was not within the

scope of his employment. For that reason, Ziegler's conduct was not covered by the liability insurance provided by the County. We affirm that ruling.

For a definition of the phrase "within the scope of employment," Judge Lerner relied on the Court of Appeals decision in *Cox v. Prince George's County,* 296 Md. 162, 460 A.2d 1038 (1983). In that case, Cox filed an action for declaratory relief on the issue of whether the actions of Prince George's County police officers in "maliciously and intentionally" allowing and encouraging a police trained canine to attack Cox were within the scope of the officers' employment. Judge Cole first set forth the relevant law on the subject:

> It is settled law, and fundamental to the concept of vicarious liability under the doctrine of *respondeat superior,* that the tortious actor must be the servant or agent of the one sought to be held liable, that is, that a master-servant or principle/agent relationship must exist. Once this first step is established, then *the plaintiff must show that the offending conduct occurred within the scope of the employment* of the servant or under the express or implied authorization of the master.

296 Md. at 165, 460 A.2d 1038 (emphasis supplied).

■ Although *Cox v. Prince George's County* was concerned with agency principles rather than with insurance coverage, it shares with the present case the common denominator of determining vicarious liability by mapping out the scope of an employee's employment.

> [W]hen a county has waived its governmental immunity, it is responsible under the doctrine of *respondeat superior* for the tortious acts of its employees which occur *in the course of their employment.*

296 Md. at 169, 460 A.2d 1038 (emphasis supplied).

In order to determine which acts are and which are not considered to be "within the scope of employment," the following analysis was employed:

> [T]he master is responsible for the wrongful acts of his servant, even though they be wilful, or reckless, if the act

done by the servant be within the scope of his employment, and in furtherance of his master's business. . . . *The simple test for determining vicarious liability under the principle of respondeat superior "is whether they were acts within the scope of his employment;* not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to be authorized by him."

296 Md. at 170, 460 A.2d 1038 (emphasis supplied). *And see Sawyer v. Humphries,* 322 Md. 247, 254, 587 A.2d 467 (1991) ("Scope of public duties" synonymous with "scope of employment" for purposes of analysis.) *See also Ennis v. Crenca,* 322 Md. 285; 293–96, 587 A.2d 485 (1991) (Scope of employment determined by whether "conduct was in furtherance of the [master's] business and incidental to it[.]")

*Sawyer v. Humphries* listed a number of factors to be considered when determining whether a public official was acting within the scope of his public duties:

*To be within the scope of the employment the conduct must be of the kind the servant is employed to perform* and must occur during a period not unreasonably disconnected from the authorized period of employment in a locality not unreasonably distinct from the authorized area, and actuated at least in part by a purpose to serve the master.

\* \* \*

. . . "In determining whether or not the conduct, although not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, *the following matters of fact are to be considered:—(a) whether or not the act is one commonly done by such servants;* (b) *the* time, place and *purpose of the act;* (c) the previous relations between the master and the servant; (d) the extent to which the business of the master is apportioned between different servants; (e) whether the act is outside the enterprise of the master or, if within the enterprise, has not been entrusted to any servant; *(f) whether or*

*not the master has reason to expect that such an act will be done;* (g) the similarity in quality of the act done to the act authorized; (h) whether or not the instrumentality by which the harm is done has been furnished by the master to the servant; (i) *the extent of departure from the normal method of accomplishing an authorized result;* and (j) *whether or not the act is seriously criminal."* [*Restatement of Agency,* § 229 (1933) ].

322 Md. at 255–56, 587 A.2d 467 (emphasis supplied). *Sawyer* finally noted that " 'where the conduct of the servant is unprovoked, highly unusual, and quite outrageous, courts tend to hold that this in itself is sufficient to indicate that the motive was a purely personal one' and the conduct outside the scope of employment." *Id.* at 257, 587 A.2d 467 (quoting *Prosser and Keaton On the Law of Torts,* 605).

We affirm the granting of summary judgment in favor of the County on the first count.

### The Second and Third Counts

The County's motion aimed at the second and third counts was styled a "Motion to Dismiss or, in the Alternative, a Motion for Summary Judgment." The court order of July 31, 1998, granting the motion, used the language "The Motion to Dismiss Counts II and III ... is Granted." The court had, however, reviewed and considered a number of exhibits submitted by each side. Under the circumstances, the rejection of the two counts was more properly the granting of a Motion for Summary Judgment than a Motion to Dismiss. In *Boyd v. Hickman,* 114 Md.App. 108, 116–18, 689 A.2d 106 (1997), Judge Hollander explained:

Appellee filed motions to dismiss and, in the alternative, motions for summary judgment. As a preliminary matter, we must determine which motion was actually granted. The trial court's memorandum opinion and the docket sheet refer to the disposition as a grant of the motion to dismiss ... Appellees note, however, that the trial judge considered materials outside the pleadings, and therefore urge us to

treat the order as the grant of a motion for summary judgment.

> *... When the circuit court considers matters outside the pleadings, the court treats the matter as a motion for summary judgment,* and *the legal effect* of the ruling in favor of the moving party *is to grant a motion for summary judgment notwithstanding the court's designation of the ruling as a motion to dismiss.*
>
> *Although the circuit court's* memorandum opinion *stated that it granted the defendants' "motion to dismiss,"* the circuit court clearly considered the affidavits and other materials submitted by the defendants. . . . Therefore, *the circuit court's consideration of matters outside the pleadings rendered its decision to grant a motion for summary judgment.*

(Citations omitted; footnote omitted; emphasis supplied).

Ms. Wolfe brought her suit under the second and third counts in her express capacity "as Assignee of Michael D. Ziegler." She alleged that he "has assigned the claims which are set forth in Counts II and III of this Complaint" to her. Her entitlement to prevail on the counts is, *ipso facto,* based on his hypothetical entitlement to prevail.

Count II charged that the County acted "in bad faith" when it failed to make a meaningful effort to settle Ms. Wolfe's claim against Ziegler. Count III charged that the County, by undertaking to provide a defense for Ziegler, was estopped from denying its obligation to indemnify him.

### A. Count II: The Failure to Attempt to Settle the Claim

█ With respect to some alleged failure of the County to attempt to settle the claim, Ms. Wolfe's argument is fatally flawed in two separate regards. It is clear the Ziegler's conduct was not within the scope of his employment and that the County, therefore, had no liability and no duty to indemnify. The County steadfastly maintained at all times that it had no such liability. It has furthermore turned out that it was absolutely correct in maintaining that position. Under the

circumstances, it was under no ancillary obligation to make a settlement offer with respect to conduct as to which it disclaimed all liability and as to which it was ultimately determined to have had no liability.

■ The second flaw in Ms. Wolfe's argument is that it is built on a legal predicate that is utterly immaterial. She invokes a limited nuance of insurance law emanating from the four cases of *Allstate Insurance v. Campbell,* 334 Md. 381, 639 A.2d 652 (1994); *Fireman's Fund v. Continental Ins. Co.,* 308 Md. 315, 519 A.2d 202 (1987); *State Farm v. White,* 248 Md. 324, 236 A.2d 269 (1967); and *Sweeten, Administrator v. National Mutual Ins. Co.,* 233 Md. 52, 194 A.2d 817 (1963). Under certain circumstances, a commercial insurance carrier may be sued in tort for a bad faith refusal to accept a settlement offer within policy limits, thereby exposing the insured to liability in excess of the policy limits. The recovery when such a tort is established is "for the amount of judgment obtained against the insured which is in excess of the policy limits." *Allstate Insurance v. Campbell,* 334 Md. at 394, 639 A.2d 652.

■ That principle of law has nothing to do with this case. This was not a case where "the insurer [had] the exclusive control, under the standard policy, of investigation, settlement and defense of any claim or suit against the insured, and [where] there is a potential, if not actual, conflict of interest." *Sweeten, Administrator v. National Mutual,* 233 Md. at 55, 194 A.2d 817. In this case, the County immediately recognized the potential conflict arising out of its disclaimer of ultimate coverage and liability and arranged for Ziegler to hire his own independent defense counsel at County expense but not under County control. In this case, any possible conflict was avoided in precisely the way recommended by *Allstate Insurance v. Campbell,* 334 Md. at 395, 639 A.2d 652:

> A common situation creating a conflict of interest is one where coverage is an issue. This occurred ↱ *Brohawn,* supra, where the plaintiffs raised both covered and noncovered claims against the insured. Because it was in the

insurer's interest to establish noncoverage, and in the insured's interest to be found liable only for the covered claims, *it was necessary for the insurer to allow the insured to choose independent counsel.*

(Emphasis supplied).

*Allstate* also describes two other circumstances that typically must apply before an obligation not to reject a settlement offer within the policy limits might be held to exist:

When a claim exceeds the amount of applicable insurance, the potential for a conflict of interest may exist, particularly when there is an opportunity to settle the claim within the policy limits, and *where liability is not an issue. ... The insured's damages in such a case are limited to the amount of any judgment in excess of policy limits.*

334 Md. at 395–96, 639 A.2d 652 (citations omitted; emphasis supplied).

In this case, the County's liability was very strenuously in issue. Most significantly, in this case there were no policy limits and there was, therefore, no verdict against Ziegler in excess of policy limits. The legal authority invoked by Ms. Wolfe has absolutely nothing to do with the case before us.

## B. Count III: Estoppel to Contest Coverage

With no supporting legal authority, Ms. Wolfe alleges that the County was somehow estopped to deny liability coverage for Ziegler's conduct, notwithstanding that the conduct was not within the scope of his employment. The estoppel argument seems to be based on the fact that the County did not immediately disclaim liability coverage. In her brief to this Court, Ms. Wolfe states:

The basis for the County/insurer's untimely coverage disclaimer was immediately known to the insurer at the moment it reviewed [Ms. Wolfe's] original Complaint. *The insurer had a clear duty to Ziegler to immediately disclaim*

*coverage.* Its failure to do so and its subsequent conduct ... clearly establishes estoppel under Maryland law.... (Emphasis supplied).

Quite aside from the fact that we see no legal significance to such an assertion even if it were true, we see no actual basis in fact for the assertion. The Complaint first brought by Ms. Wolfe was filed in early March of 1993. Only a few weeks later, on March 26, 1993, David Plymyer, a Deputy County Attorney, sent Ziegler a letter on behalf of the County which stated:

> With respect to the incident or incidents which occurred on or about November 15, 1990 ... in which you were involved or for which you may be legally liable, and which are the subject matter of the above referenced lawsuit, you are advised that *Anne Arundel County reserves all rights and defenses which it has in conjunction with the Local Government Tort Claims Act and the rules and regulations of Anne Arundel County Self–Insurance Fund.*
>
> *We further notify you that any activity on our part by way of investigation or settlement which we may undertake, or any defense which we may undertake on your behalf arising out of this legal action or any other action instituted against you, does not constitute a waiver of any of our rights.*

(Emphasis supplied).

The letter of March 26, 1993 clearly distinguished the duty to defend and the duty to indemnify. With respect to an independent defense, it expressly provided:

> Because the suit alleges that certain of the acts or omissions were within the scope of your employment, we will provide you a legal defense. *This defense is provided without prejudice to our right to deny responsibility for any judgment entered against you. Because of the potentially adverse interest between you and the County, you are entitled to select a defense counsel of your own choosing,* and the County will bear the reasonable costs incurred in your defense. *It is now your responsibility to retain*

*counsel* to respond to the pleadings which have been filed against you.

(Emphasis supplied).

The letter was then as clear as it could be that the acts alleged against Ziegler, if true, would not be covered by the County:

> *We are reserving our right* to later disclaim any obligation under the insurance coverage and the Local Government Tort Claims Act, and *to assert a defense of no coverage because the actions alleged in the lawsuit, if proved, would constitute intentional wrongdoing and would constitute actions not within the scope of your employment* with the Anne Arundel County Police Department, and we will avail ourselves of any other coverage defenses which may arise.

(Emphasis supplied).

There is no basis, legal or factual, for Ms. Wolfe's claim that the County was estopped to disclaim liability coverage. Summary Judgment in favor of the County on the third count was properly granted.

## An Alternative Ground

In pointing out an alternative ground for affirming the decision of Judge Lerner, we will touch, in part, on several arguments raised by the County in its cross-appeal.

With respect to the second and third counts, those counts, as noted, are brought by Ms. Wolfe not in her own right but exclusively in her capacity as the assignee of whatever right to indemnification was possessed by Ziegler himself. It was shortly after November 6, 1997, that Ziegler assigned to Ms. Wolfe any rights he may have had to indemnification by the County. With respect to such an assignment, the Court of Appeals explained in *James v. Goldberg*, 256 Md. 520, 527, 261 A.2d 753 (1970):

> *An* unqualified *assignment* generally operates to transfer to the assignee all of the rights, title and interest of the assignor in the subject of the assignment and *does not*

*confer upon the assignee any greater right than the right possessed by the assignor.*

(Emphasis supplied). *See also Webb v. Baltimore Commercial Bank,* 181 Md. 572, 580, 31 A.2d 174 (1943)("[O]bviously, the rights of the assignee are no greater than those of his assignor.").

Ms. Wolfe filed her original Complaint on November 6, 1997. The assignment of rights followed shortly thereafter. Her amended Complaint, containing for the first time Counts II and III brought in her capacity as assignee, was filed on January 14, 1998. To determine Ms. Wolfe's entitlement to prevail on the second and third counts, therefore, we must determine hypothetically what Ziegler's right to prevail would have been as of January 14, 1998.

## A. Belated Judicial Review, In Effect, of Administrative Decision

█ Had he proceeded in his own name, Ziegler would have been completely out of court for several separate and independent reasons. Following the judgment in the United States District Court which awarded Ms. Wolfe slightly over $1 million in damages, Ziegler submitted a claim for indemnification to the Anne Arundel County Self–Insurance Committee. On May 30, 1995, the Committee denied Ziegler's Claim. Ziegler appealed that decision to the Anne Arundel County Board of Appeals, which, following a hearing, affirmed all aspects of the Committee's decision and accordingly denied Ziegler indemnification. The Board of Appeals's Order was docketed on February 1, 1996. In that Order the Board pointed out:

*Any appeal from this decision must be in accordance with the provisions of Section 604 of the Charter of Anne Arundel County, Maryland.*

(Emphasis supplied). Section 604 of the Anne Arundel County Charter ("Charter"), in turn, provides:

*Within thirty days after any decision by the County Board of Appeals is rendered, any person aggrieved by the*

*decision of the Board* and a party to the proceedings before it *may appeal such decision to the Circuit Court of Anne Arundel County,* which shall have the power to affirm the decision of the Board, or if such decision is not in accordance with law, to modify or reverse such decision, with or without remanding the case for rehearing, as justice may require.... *The review proceedings provided by this section shall be exclusive.*

(Emphasis supplied).

Despite Ziegler's option under § 604 to appeal to the circuit court within thirty days of the Board's decision (which meant that Ziegler would have had to file in the circuit court by March 2, 1996), Ziegler chose not to appeal. With the expiration of that period for filing an appeal with the circuit court, the February 1, 1996, decision of the Board of Appeals that Ziegler was not entitled to indemnification became final as to him. What was final as to the assignor, moreover, was equally final as to the assignee.

Ms. Wolfe attempts to wriggle out from under that foreclosure by arguing that the subject matter of the second and third counts was different from the subject matter that had been before the Board of Appeals. The wriggling is to no avail. The subject matter decided by the Board of Appeals was that Ziegler was not entitled to indemnification because his tortious conduct had not been within the scope of his employment. Although the specific arguments raised in the second and third counts may not have been raised before the Board of Appeals, they were nothing more than different arguments touching on the same subject matter.

The determination that Ziegler's conduct was not within the scope of his employment and, therefore, was not covered would have been just as fatal to his hypothetical and peripheral argument that the County had some obligation to try to settle the claim as it was to his actual and more central argument that the County owed him liability coverage at all. The argument based on equitable estoppel is simply an adjectival or procedural attack on the County's entitlement to deny

its duty to indemnify.[1] Regardless of whether Ziegler raised every argument before the Board of Appeals that conceivably could have been raised, the issue of his entitlement to indemnification was finally litigated as of February 1, 1996, and the time for appealing that decision ran out on March 2, 1996.

Had Ziegler himself either sued the County or sought a declaratory judgment against the County on the second and third counts on January 14, 1998, it would, in effect, have been an attempt to obtain belated judicial review of an issue already finally litigated at the administrative level on February 1, 1996. That petition for judicial review of the administrative decision would have been barred by the 30–day filing requirement, a requirement in the nature of a statute of limitations. *Colao v. County Council of Prince George's County,* 346 Md. 342, 358–65, 697 A.2d 96 (1997); *Wormwood v. Batching Systems, Inc.,* 124 Md.App. 695, 704–05, 723 A.2d 568 (1999).

The same limitations defense that would have been hypothetically effective against Ziegler (the assignor) was equally available against Ms. Wolfe (the assignee). As the Court of Appeals recently observed in *Jones v. Hyatt,* 356 Md. 639, 653 n. 8, 741 A.2d 1099 (1999):

> In their *certiorari* petition, the Joneses did not raise the issue of when the statute of limitations began to run on their cause of action *as assignees* of K & D. As the trial court correctly held, however, any negligence action, which K & D might have had accrued when K & D first sustained harm as a result of Hyatt's alleged breach of tort duty. . . . *As assignees, the Joneses were bound to the same limitations period as their assignor. . . . Webb v. Commercial Bank,* 181 Md. 572 [31 A.2d 174] (1943) (*an assignee is "subject to all defenses against [the assignor's] claim,* for obviously, the rights of the assignee are no greater than those of his assignor * * * *the statute of limitations applied."*).

---

1. What could possibly be the effect, moreover, of equitably estopping the County from denying in 1998 what it no longer needed to deny in 1998 because the issue had already and finally been established in the County's favor in 1996?

(Emphasis supplied). The County in its Motion for Summary Judgment on March 12, 1998, expressly raised that limitations issue and cannot in any sense be said to have waived it. *Colao*, 346 Md. at 362, 697 A.2d 96; *Wormwood*, 124 Md.App. at 705, 723 A.2d 568.

On the second and third counts, the assignee stands in the shoes of the assignor. Had the assignor filed the Amended Complaint of January 14, 1998, in his own name, it would have represented an effort on his part to reopen, with a few variant arguments, a question that had already been settled against him almost two years before, on February 1, 1996. In explaining why the 30–day limitation on a request for judicial review of an administrative decision is sometimes harsh but necessary, Judge Wilner pointed out in *Colao v. County Council*, 346 Md. at 364, 697 A.2d 96:

> *The basic battle in these cases is fought at the agency level.* Whether acting under an administrative procedures act or under common law principles, *the court's role is essentially limited to assuring that the agency acted lawfully,* that there was substantial evidence to support its finding, and that it was not arbitrary. *This Court was concerned that these cases, having already been through an often exhaustive administrative process, not linger unnecessarily in the court system.* Making the 30–day requirement for filing the petition in the nature of an absolute statute of limitations, subject to waiver by failure of a respondent to raise the defense in a proper manner but not subject to discretionary extension, was in furtherance of that objective.

(Emphasis supplied).

The Complaint now before us was, to be sure, not brought in Ziegler's name and was not styled as a request for judicial review of the decision of the administrative agency. With respect to the second and third counts, however, that is, in effect, exactly what it is. "A rose by any other name ..."

With respect to the use of a declaratory judgment action to attempt to reopen the issue of Ziegler's liability coverage which seemed as if it had been finally adjudicated when no

judicial review was sought from the decision of the County Board of Appeals in that regard, the words of Chief Judge Hammond in *Fertitta v. Brown,* 252 Md. 594, 599–600, 251 A.2d 212 (1969), appear to have pertinence:

> *Once a controversy has been finally adjudicated* by a court with jurisdiction of the subject matter and the parties, *the controversy* is no longer alive and therefore *is not the proper subject for a declaratory judgment action;* and it is generally held that judgments and decrees speak for themselves and declaratory proceedings are not available either to construe, clarify or modify them. *Declaratory proceedings* were not intended to and *should not serve as a substitute for appellate review or as a belated appeal.*

(Emphasis supplied).

## B. *Res Judicata*

■ Even if the second and third counts were not conceptualized as a belated effort to have the circuit court revisit and thereby review what the County Board of Appeals had earlier decided, the second and third counts would still be barred by principles of *res judicata.*

Ziegler's request for indemnity was rejected by the Self–Insurance Fund Committee on May .30, 1995. As was his right, Ziegler "appealed" that decision to the County Board of Appeals. We hold that the proceeding before the County Board of Appeals qualified, under *Batson v. Shiflett,* 325 Md. 684, 701–05, 602 A.2d 1191 (1992), as one of those administrative agency decisions entitled to have preclusive effect. *Batson,* 325 Md. at 701–02, 602 A.2d 1191, quoted with approval the opinion of the Supreme Court in *United States v. Utah Construction Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 661 (1966):

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.

In *White v. Prince George's County*, 282 Md. 641, 658, 387 A.2d 260 (1978), Judge Eldridge pointed out:

Although early cases often made the sweeping statement that decisions of administrative agencies can never be *res judicata*, this Court later came to recognize that the principles of public policy underlying the rule of *res judicata* were applicable to some administrative agencies performing quasi judicial functions. . . .

The Tax Court is an administrative agency performing a quasi judicial function . . . [U]nder the provisions of Art. 81, §§ 224–231, it functions in many respects as a court. Among other things, the Tax Court has the power to issue subpoenas to compel the attendance of witnesses and the production of documents; it is directed to conduct its proceedings "in a manner similar to proceedings in courts of equity in this State"; and its "order is final and conclusive" unless an appeal to the courts is taken. Particularly in light of this latter provision, we believe that the decisions of the Tax Court have *res judicata* effect.

(Citations omitted).

With respect to the Anne Arundel County Board of Appeals in particular, Judge Karwacki observed in *Halle v. Crofton Civic Ass'n*, 339 Md. 131, 139–40, 661 A.2d 682 (1995):

Under the Express Powers Act, Md.Code (1957, 1994 Repl.Vol.), Art. 25A, § 5(U), each county is authorized to create a board of appeals. Anne Arundel County, by its charter, created the Board of Appeals as an independent unit of county government and vested the Board with the power to hear *de novo* all appeals authorized by the Express Powers Act.

(Footnote omitted). The Court of Appeals went on in that case, 339 Md. at 141, 661 A.2d 682, to quote with approval from *Daihl v. County Board of Appeals*, 258 Md. 157, 162, 265 A.2d 227 (1970), as it catalogued some of the things that the County Board of Appeals could do in the course of hearing an appeal *de novo:*

In this sense *de novo* means that the Board of Appeals may hear testimony and consider additional evidence pertaining to the issue or issues presented on appeal.

With respect to the identity of the parties necessary to trigger *res judicata,* there is no problem in this case. The parties to the litigation before the County Board of Appeals were the County and Ziegler. Because of the privity between Ziegler as assignor and Ms. Wolfe as assignee, the parties are the same in the present litigation.

We also hold that the cause of action is the same. The fundamental issue, then and now, is whether there was any liability coverage on the part of the County for the tortious conduct of Ziegler and any consequential obligation on the County to indemnify Ziegler. That issue was finally litigated by the County Board of Appeals and no petition for judicial review was ever taken from that agency decision to the circuit court. That issue may not now be relitigated by Ziegler directly or by Ms. Wolfe as his assignee.

*Res judicata* applies, of course, not only with respect to any issue that was actually litigated but to any issue that could have been litigated before the County Board of Appeals. *Frontier Van Lines, Inc. v. Maryland Bank & Trust Co.,* 274 Md. 621, 623, 336 A.2d 778 (1975); *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92 (1961). The inextricably intertwined sub-claim that the County had, as a necessary incident of its liability coverage, some secondary duty not to reject a settlement offer within policy limits was indisputably a sub-issue that Ziegler could have raised before the County Board of Appeals, but did not. The further sub-argument that the County was somehow equitably estopped from denying liability coverage was clearly also a sub-argument that Ziegler could have raised before the County Board of Appeals, but did not. Both were issues not peculiarly available to Ms. Wolfe but issues that had potential impact directly on Ziegler himself. As such, he could have raised them.

Just as the assignor (Ziegler) would hypothetically have been barred by principles of *res judicata* from raising anew an

issue that had been litigated or from raising for the first time issues that could have been litigated, his assignee should similarly also have been barred.

Even if the second and third counts could somehow be conceptualized as not being the same cause of action (or aspects of the same cause of action) that was before the County Board of Appeals, principles of collateral estoppel would still come into play to preclude the relitigating of a fact that had already, on the merits, been litigated in favor of the County.

In the course of that litigation between the County and Ziegler, it had finally been determined that Ziegler's tortious conduct was not within the scope of his employment. Proceeding from that premise, it had finally been determined that Ziegler, as the insured, enjoyed no liability coverage for his conduct from the County, as the alleged insurer, and that Ziegler, therefore, had no right to indemnity from the County. That critical fact having been litigated in the County's favor, neither Ziegler nor anyone else in privity with him was entitled to have that fact relitigated. *MPC, Inc. v. Kenny,* 279 Md. 29, 32–34, 367 A.2d 486 (1977). If Ziegler had no right to indemnity from the County, self-evidently neither did Ms. Wolfe as the assignee of whatever right, or lack thereof, he enjoyed in that regard.

***JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.***