REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1245

September Term, 2015

_____

MICHAEL JOHNSON, JR.

v.

MAYOR AND CITY COUNCIL OF
BALTIMORE, ET AL.

_____

Wright,
Reed,
Sharer, J. Frederick
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Reed, J.
_____

Filed:  June 1, 2017

This appeal stems from the aftermath of this Court's reported opinion in *Francis v. Johnson*, 219 Md. App. 531 (2014), in which Michael Brian Johnson, Jr., appellant, filed an action in the Circuit Court for Baltimore City against three detectives of the Baltimore City Police Department ("BPD"), Tyrone S. Francis, Milton G. Smith, III, and Gregory Hellen (collectively, the "officers"). A jury awarded compensatory and punitive damages to Mr. Johnson for intentional torts and constitutional violations "based on the officers' actions in taking him from Baltimore in a police van, assaulting him, breaking his phone, and then dropping him off in Howard County, in the rain, without shoes, socks or a way home." *Francis*, 219 Md. App. at 537.

The officers filed a motion for judgment notwithstanding the verdict ("JNOV"), a new trial, and remittitur, which was granted in part and denied in part by the trial court. The trial court ordered a new trial unless Mr. Johnson agreed to a remittitur in the compensatory damages award, which he ultimately did. The officers appealed. This Court largely affirmed the judgments of the trial court; nevertheless, we revised the compensatory damages and remanded the case for further proceedings.

Before those further proceedings took place, Mr. Johnson filed a Request for Writ of Execution and Levy Upon Personal Property and a Request for Garnishment of Property in the amount of this Court's revised judgment, identifying the Mayor & City Council of Baltimore City (the "City"), appellees, as "Judgment Debtors" and M&T Bank as the "Garnishee." After the clerk of the court issued both writs, the City filed a Motion to Quash Writs of Execution and Garnishment of Property and to Release Property from Levy.

1

After a hearing, the motions court quashed both writs and ordered that the funds be released by the bank. The court found (1) that there was no valid judgment to execute upon because the judgment had not been revised by the circuit court after this Court's remand, (2) that the writs were not timely filed, and (3) that the City was not the judgment debtor in this case. Mr. Johnson noted a timely appeal, and presents one question for our review:

> Did the [circuit c]ourt err in granting the Mayor & City Council's Motion to Quash Writs of Execution and Garnishment of Property and to Release Property from Levy[?]

For the following reasons, we answer in the negative and, accordingly, affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Prior Proceedings

The following is a summary of the background as pertinent to this case. The detailed factual background of the trial and verdict is set out in this Court's reported opinion in *Francis*, *supra*.

On February 23, 2010, Mr. Johnson's parents, on behalf of Mr. Johnson,[1] filed an action in the Circuit Court for Baltimore City arising from his detention by the officers on May 4, 2009. Seeking both compensatory and punitive damages, they claimed assault,

---

[1] At the time of the action, because Mr. Johnson was a minor, it was filed through his mother and next friend, Kathryn McDonald, and his father and next friend, Michael Brian Johnson, Sr. During the pendency of the case, Mr. Johnson reached the age of 19, so he was substituted as sole plaintiff by the trial court upon motion at the end of the plaintiffs' case.

2

battery, false imprisonment, and violations of Articles 24 and 26 of the Maryland Declaration of rights. Specifically,

> [t]he complaint alleged that the officers were "acting . . . within the scope of their employment as Baltimore City Police Officers" when the foregoing [detention] occurred, and they "maliciously, intentionally, carelessly, recklessly, with gross negligence, wantonly, willfully, wrongfully, unreasonably, with reckless disregard for human life; and without justification assaulted, battered, and detained" Mr. Johnson. Mr. Johnson sought compensatory damages in the amount of ten million dollars ($10,000,000) and punitive damages in the amount of fifteen million dollars ($15,000,000).

*Francis*, 219 Md. App. at 539.

A jury trial was held on January 17–25, 2013. On January 25, 2013, the jury rendered its verdict in favor of Mr. Johnson and awarded him a total of $500,000 in compensatory and punitive damages. The vast majority of those damages was against Detectives Francis and Hellen.

The officers subsequently filed a motion for JNOV, a new trial, and remittitur on February 4, 2013, alleging, *inter alia*, that there was no competent evidence to support the jury's verdict that the injuries were committed through malice on the part of the officers, and that the verdict was excessive and exceeded the damages cap from the Local Government Tort Claims Act ("LGTCA"), found in Maryland Code (1974, 2013 Repl. Vol.) § 5–301 *et seq.* of the Courts and Judicial Proceedings Article ("CJP"). The trial court filed a memorandum opinion and order on May 21, 2013, granting the motion in part and denying it in part. The court found that there was sufficient evidence to support the jury's finding of malice and that, while the awards against Detectives Smith and Francis were

3

above the LGTCA's statutory cap, the officers were not entitled to a reduction because of the malice finding. The court, however, also found that the awards for compensatory damages were "grossly excessive" and ordered a new trial as to damages only, unless Mr. Johnson agreed to a remittitur of $165,000 on the compensatory damages award. Mr. Johnson agreed, and the remittitur was entered May 28, 2013, revising compensatory damages to $300,000, in addition to the $34,000 in total punitive damages.

The officers timely appealed to this Court. Pertinent here, they alleged that the trial court erred both in failing to further reduce the damages award and in allowing the jury to consider the issue of malice. Ultimately, on October 6, 2014, this Court issued the opinion in *Francis*, *supra*, reversing the damages in part, but otherwise affirming the judgments of the circuit court. For reasons not relevant here, the damages were further revised down to a total of $281,000 against the officers, and the case was remanded for further proceedings. Subsequently, the officers filed a petition for writ of certiorari, and Mr. Johnson filed a conditional cross petition for writ of certiorari, both of which were denied by the Court of Appeals on April 20, 2015.

**B. Current Proceedings**

Before any further proceedings regarding this Court's remand for revised damages, Mr. Johnson filed the two requests for writs underlying this appeal. On June 22, 2015, he filed a Request for Writ of Execution and Levy Upon Personal Property and a Request for Garnishment of Property in the circuit court, seeking the revised $281,000, plus interest of 10% per annum from January 25, 2013. Both request for writs were captioned in the same

4

style as before, but were specifically directed against the City itself, rather than personally against the officers.

On June 26, 2015, the clerk of the circuit court issued the writs, both of which named the City as the "Judgment Debtor." The Writ of Execution directed the Sheriff of Baltimore City to levy upon the property of the City to satisfy a monetary judgment, and the Writ of Garnishment of Property, addressed to M&T Bank as "Garnishee," directed the bank to hold the property of the City (namely, $281,000) subject to further proceedings in the circuit court. On July 3, 2015, the City was informed by M&T Bank that the funds would be debited that day from the City's disbursement account and would be held until the bank received a court order to disburse the funds.

On July 8, 2015, the City filed a motion to quash the writs and to release the property from levy, and Mr. Johnson filed a response on July 20, 2015. At a hearing on the motion two days later, on July 22, 2015, the motions court made the following findings:

> There's [*sic*] so many things involved in this case here. And I'm not really going to go into all of them with respect to what the requests for the garnishment and the execution – the Writ of Execution – the contents of those requests. I will say that the City of Baltimore is not the judgment debtor in this case. So I do agree with the City that they are not the judgment debtor and there never should have been a Writ of Execution of garnishment [*sic*] issued against them. But in addition, I do also agree that the property of the City cannot be garnished, liens cannot be placed against the City property – so it's not proper to request a Writ of Garnishment and/or execution against Baltimore City's property. So I am going to quash the Writ of Execution and the Writ of Garnishment, and direct the Bank to unfreeze the funds, see that they're back into the account of the City.

5

There's [*sic*] several things that – and I also agree that the Judgment – once [t]he Court of Special Appeals remanded this case, affirming part and reversing part [*sic*] – there's no longer a valid Judgment to execute upon either. Until the Court takes action – pursuant to the decision of the Court of Special Appeals to enter the correct Judgment. So there is no correct Judgment at this time. . . .

Before concluding the hearing, the following discussion took place between Mr. Johnson's counsel and the motions court:

[COUNSEL]: Your Honor, may I ask for just one clarification?

THE COURT: Yes.

[COUNSEL]: As I understand it, Your Honor has ruled that number one, the Writ is not timely, because it's premature.

THE COURT: Yes.

[COUNSEL]: And if I – I don't want to put words into the [c]ourt's mouth – but even if it had been, the City property still cannot be attached. Is that correct?

THE COURT: That is correct.

[COUNSEL]: Okay, thank you.

THE COURT: Because there's no valid Judgment right now. There's no proper Judgment in this case.

[COUNSEL]: I'm not arguing – I just wanted clarification.

THE COURT: No no no, that's right, but I'm just saying that's the basis for my ruling, of it being premature.

[COUNSEL]: Yes, yes.

THE COURT: Because the Court of Special Appeals' decision has not been acted upon. . . .

6

The motions court filed an order granting the City's motions to quash both writs and releasing the money back to the City that same day, and Mr. Johnson noted a timely appeal on August 5, 2015.

## DISCUSSION

### A. Parties' Contentions

Mr. Johnson argues the motions court erred in granting the motion to quash. His argument is essentially threefold. First, he argues that the filing of the requests for writs was timely because the judgment was originally entered on January 31, 2013, and, since no stay of judgment has been entered or requested, the Court of Appeals' denial of certiorari means that he is entitled to execute upon the judgment. Second, he argues that, pursuant to the LGTCA and the Court of Appeals' holding in *Houghton v. Forrest*, 412 Md. 578 (2010), the City is the "[a]ppropriate[]" judgment debtor and, therefore, he is entitled to enforce the judgment against the officers' employer—namely, the City. Finally, Mr. Johnson claims, through an affidavit from one of his attorneys, that M&T Bank was the "[p]roper [s]ource of the [f]unds." The affidavit explains that the attorney represented different plaintiffs in a separate case against a BPD officer. Mr. Johnson believes that the affidavit, together with a copy of a redacted check from the settlement of the other case his attorney was involved in, "served the purpose of identifying the account from which payments are made on behalf of the [BPD] in actions against the Baltimore City Police Department."

The City responds with four arguments, beginning with its "main argument in the circuit court:" that "it has long been established that a party cannot execute a judgment

7

against municipal property." Second, the City argues that Mr. Johnson "has sought to collect his judgment from the wrong entity" because the BPD is the "local government" for the purposes of the LGTCA, as the BPD is: (1) a state – not City – agency; and (2) the actual employer of Baltimore City police officers. Third, the City argues the circuit court's concerns over whether the writs were prematurely filed were not about a stay of the judgment, but, rather, were about the *finality* of the judgment because, while the case was remanded by this Court, no proceedings regarding the remand had taken place. Fourth, and finally, the City contends that it cannot be subject to a judgment in this case because, "if for no other reason," it has never been a party to the proceedings.

### B. Standard of Review

Maryland Rule 8-131(c) provides, "When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous[.]" However,

> [a]lthough the factual determinations of the circuit court are afforded significant deference on review, "'the clearly erroneous standard for appellate review . . . does not apply to a trial court's determinations of legal questions or conclusions of law based on findings of fact.'" *Ins. Co. of N. Am. v. Miller,* 362 Md. 361, 372, 765 A.2d 587 (2001) (citation omitted). Instead, "where the order involves an interpretation and application of Maryland statutory and case law, we must determine whether the lower court's conclusions are 'legally correct' under a *de novo* standard of review." *Walter v. Gunter,* 367 Md. 386, 392, 788 A.2d 609 (2002).

*Jackson v. 2109 Brandywine, LLC*, 180 Md. App. 535, 567 (2008) (alterations in original).

*See also Friedman v. Hannan*, 412 Md. 328, 335–36 (2010); *Morgan Stanley & Co., Inc.*

*v. Andrews*, 225 Md. App. 181, 187 (2015); *Montgomery County v. Fraternal Order of Police*, 222 Md. App. 278, 294 (2015).

### C. Analysis

"In general, '[t]he LGTCA limits liability, provides for indemnification, and establishes procedural requirements relating to suits against officials of [sic] local government employees.'" *Board of Education of Prince George's County v. Marks-Sloan*, 428 Md. 1, 30 (2012) (quoting *Houghton*, 412 Md. at 591). The Court of Appeals has explained that

> [t]he purpose of the LGTCA is to provide a remedy for those injured by local government officers and employees acting without malice and in the scope of employment, while ensuring that the financial burden of compensation is carried by the local government ultimately responsible for the public employee's actions. *Ashton v. Brown,* 339 Md. 70, 107–08, 660 A.2d 447, 465–66 (1995). Thus, the LGTCA requires Maryland counties and other entities defined therein as "local governments," § 5–301(d), to pay, up to certain limits, judgments for compensatory damages rendered against their employees as a result of tortious acts committed in the scope of employment. *Williams v. Maynard,* 359 Md. 379, 380–81, 754 A.2d 379, 380 (2000). *See* § 5–303(b).

*Moore v. Norouzi*, 371 Md. 154, 166–67 (2002) (footnotes omitted). Importantly, for our purposes, the LGTCA specifically includes both the City and the BPD in its definition of "Local government." CJP § 5-301(d)(4) & (21). This distinction is important because the BPD is a decidedly peculiar agency in the eyes of Maryland law.

Until 1860, the police function in the City of Baltimore was under municipal control, but was ineffectual, corrupt, and politically partisan. H.H. Walker Lewis, *The Baltimore Police Case of 1860*, 26 Md. L. Rev. 215, 218-225 (1966). The problem came to a head in

9

the elections of 1857, when the police were unwilling and unable to stop violence directed at Democrats. *Id*. When the Democrats won control of the state legislature in the 1859 elections, the first order of business was to seize state control of the Baltimore Police Department. *Id*. at 225. The Court of Appeals affirmed the constitutionality of this State take-over, *Baltimore v. State*, 15 Md. 376 (1860), and it has remained a State agency since. Over time, the State's role in supervising the Baltimore Police Department has lessened as power over appointment and termination of the Police Commissioner and the budget for the Police Department were transferred to the City. *See Baltimore v. Clark*, 405 Md. 13 (2008). Nevertheless, the case law is absolutely clear that the Baltimore Police Department remains a State agency. *Id*. And equally clearly, the Baltimore Police Department is not an agent or instrumentality of the City.

Logically, it follows that, for the purposes of the LGTCA, the City is *not* the "local government" at issue here. As the City lays out in great detail in its brief, this has long been firmly established in our State's caselaw. *See, e.g.*, *Houghton*, 412 Md. at 588 ("[T]he BCPD was created as a state agency, through an act of the General Assembly, and not as a municipal agency."); *Mayor & City Council of Baltimore v. Clark*, 404 Md. 13, 23 (2008) ("[T]he Baltimore Police Department is not an agency of the City of Baltimore and has not been for some time."); *Clea v. Baltimore*, 312 Md. 662, 668 (1988), *superseded on other grounds by statute as stated in D'Aoust v. Diamond*, 424 Md. 549, 586 (2012) ("Unlike other municipal or county police departments which are agencies of the municipality or county . . ., the Baltimore City Police Department is a State agency."); *Ashton v. Brown*, 339 Md. 70, 104 n.18 (1995); *Baltimore Police Dep't v.*

10

*Cherkes*, 140 Md. App. at 303–05, 323; *Williams v. Baltimore*, 128 Md. App. 1 (1999), *rev'd on other grounds*, 359 Md. 101 (2000).

In an attempt to circumvent that unquestionably settled principle, Mr. Johnson relies heavily—and, as we explain, erroneously—on the Court of Appeals' holding in *Houghton*, *supra*. Because his reliance is misplaced, we need not set out the facts in any large detail; rather, we feel it sufficient to say that the relevant facts of that case are similar enough to those presented here. Mr. Johnson quotes the Court's holding in *Houghton* as follows: "We also hold that there is no reason to determine if Houghton acted with malice, *as the BCPD is liable for the judgment against Houghton regardless*. Forrest is thus entitled to collect her judgment directly from the BCPD." *Houghton*, 412 Md. at 593 (emphasis added). Thus, Mr. Johnson contradicts his own argument within the same breath in which he attempts to support it. The Court in *Houghton* held that the BPD was liable for the officer's damages, not the City.

We also agree with the City's argument that plaintiffs in this State, such as Mr. Johnson, cannot obtain municipal property by execution. This long-standing principle is based on the fact that "all the property held by the [municipal] corporation is, . . . when considered in an enlarged sense, held for public uses and benefits." *Darling v. City of Baltimore*, 51 Md. 1 (1879). Therefore, as the Court of Appeals explained in no uncertain terms in *Darling*,

> it would be attended with the most serious consequences, and involve the greatest amount of inconvenience, to lay it down as a rule that any property belonging to a municipal corporation, not actually used in the discharge of its public functions, could be levied upon and sold under ordinary execution, as upon

11

> judgment against a private corporation. Both upon principle and the reason of the thing therefore, *we conclude that an execution on judgment against a municipal corporation <u>cannot</u> lie.*

*Id.* at 14 (emphases added). *See also In re Fowble*, 213 F. 676, 679 (D. Md. 1914) ("In Maryland, municipal property is not liable to be taken on execution." (citation omitted)). This does not mean that plaintiffs similarly situated to Mr. Johnson have no legal remedy by which to seek payment of a judgment against the BPD. As we explained in *Baltimore Police Dep't v. Cherkes*, 140 Md. App. 282, 326 (2001), if the BPD fails to pay a judgment for compensatory damages entered against one of its officers, "it is subject to an enforcement action" because "its common law State sovereign immunity has been waived [with regards to its duties under the LGTCA]."

Moreover, even if the City were the judgment debtor in this case and Mr. Johnson could obtain a judgment against the City by execution, we hold that Mr. Johnson's actions to collect on the judgment were void for being both premature (further proceedings ordered by this Court in *Francis*, *supra* had not yet occurred) and against a non-party to the case. Therefore, Mr. Johnson's appeal fails for these reasons as well.

### CONCLUSION

For the reasons stated above, the motions court did not err in granting the City's motion to quash, and, accordingly, the judgment of the circuit court is affirmed.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

12