*Michael Johnson, Jr. v. Tyrone S. Francis, et al.*, Nos. 1425 & 2500, September Term, 2017. Opinion by Fader, J.

**DISCOVERY – DISCOVERY IN AID OF ENFORCEMENT OF A JUDGMENT – INTERROGATORIES**

Limitations on interrogatories contained in Rule 2-421 apply to interrogatories propounded under Rule 2-633(a)(1). Thus, a judgment creditor may not propound interrogatories in aid of enforcement of a money judgment to non-parties.

**DISCOVERY IN AID OF ENFORCEMENT OF A JUDGMENT – LIMITATION ON SCOPE OF DISCOVERY**

The discovery authorized by Rule 2-633 is limited to that which may aid in enforcement of a judgment creditor's existing money judgment. Such discovery must be relevant to, and reasonably calculated to lead to the discovery of admissible evidence regarding, enforcement of that money judgment.

**LOCAL GOVERNMENT TORT CLAIMS ACT – STATUTORY INTERPRETATION – LIABILITY FOR JUDGMENTS AGAINST EMPLOYEES – SCOPE OF EMPLOYMENT**

Under the Local Government Tort Claims Act, a local government is liable to a plaintiff for the amount of the judgment against its employee if and only if the employee who committed the tortious acts or omissions at issue was acting within the scope of his or her employment with the local government.

**LOCAL GOVERNMENT TORT CLAIMS ACT – ENFORCEMENT OF A JUDGMENT AGAINST LOCAL GOVERNMENT**

A plaintiff who obtains a judgment against an employee of a local government can establish the local government's liability through an enforcement action against the local government. In such a proceeding, the local government can raise as a defense that the employee was not acting within the scope of his or her employment.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

Nos. 1425 & 2500

September Term, 2017

_____

MICHAEL JOHNSON, JR.

v.

TYRONE S. FRANCIS, et al.
_____

Leahy,
Reed,
Fader,

JJ.
_____

Opinion by Fader, J.
_____

Filed: November 28, 2018

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document ° authentic.



Suzanne C. Johnson, Acting Clerk

This consolidated appeal arises from appellant Michael Johnson, Jr.'s attempts to execute on a judgment entered against three Baltimore City police officers. Having previously been unsuccessful in his effort to collect from the non-party City of Baltimore, Mr. Johnson turned to the non-party Baltimore Police Department (the "Department"). He first issued interrogatories seeking detailed information about the Department's assets. He then sought to obtain the same information through depositions of the Department's then-commissioner and then-chief fiscal officer. The Circuit Court for Baltimore City entered protective orders as to all of this discovery and quashed the subpoenas. Mr. Johnson argues that the court erred in doing so.

We affirm. The circuit court did not err in protecting the Department from having to respond to interrogatories because the Maryland Rules permit interrogatories to be issued only to parties and the Department is not a party. The circuit court also correctly quashed the subpoenas, which were not reasonably calculated to lead to the discovery of evidence relevant to the enforcement of a judgment against the officers.[1]

---

[1] The Department claimed for the first time at oral argument that Mr. Johnson has not yet obtained a new judgment against the three officers in conformance with our opinion in *Francis v. Johnson*, 219 Md. App. 531, 537 (2014) ("*Johnson I*"), *cert. denied*, 442 Md. 516 (2015). As that contention was not preserved for our review, does not affect our subject matter jurisdiction, and need not be resolved to reach our holding here, we do not address it in this opinion. Rule 8-131(a). We presume, only for purposes of this opinion, that a valid judgment against the three officers exists. We note, however, that a valid judgment is a precondition to a party's right to take *any* discovery in aid of enforcement under Rule 2-633, an issue that may become relevant in further proceedings.

# BACKGROUND

*Prior Proceedings*

In litigation initiated in 2010, Mr. Johnson alleged that three officers of the Department violated his rights by "taking him from Baltimore in a police van, assaulting him, breaking his phone, and then dropping him off in Howard County in the rain, without shoes, socks or a way home." *Johnson I*, 219 Md. App. at 537. After a 2013 trial, a jury found the officers liable and awarded Mr. Johnson $500,000 in damages, which we ultimately reduced to $247,000 in compensatory damages and $34,000 in punitive damages. *Id.* at 537, 560-61, 564. We further found that the court did not abuse its discretion by upholding the jury's award of punitive damages because of the "overwhelming evidence to support a finding of malice on the part of" two of the officers. *Id.* at 564. We remanded the case for further proceedings, which necessarily would include entering a new judgment against the officers for the reduced amounts. *Id.*

Before any further proceedings in the trial court occurred on remand, Mr. Johnson sought a writ of execution and a writ of garnishment against the City of Baltimore. *Johnson v. Mayor & City Council of Balt.*, 233 Md. App. 43, 50 (2017) ("*Johnson II*"). At the City's request, the trial court quashed the writs. *Id.* at 51. We affirmed, holding that (1) Mr. Johnson's collection efforts were premature because no proceedings had taken place on remand to enter the new judgment, as required by *Johnson I*, and (2) Mr. Johnson could not collect from the City, which was not responsible for a judgment against officers of the Department. *Id.* at 54-56. We noted in that opinion that if the Department failed to pay a judgment for compensatory damages against its officers, the Department would be

2

"subject to an enforcement action" by Mr. Johnson. *Id.* at 56 (citing *Balt. Police Dep't v. Cherkes*, 140 Md. App. 282, 326 (2001)). To date, Mr. Johnson has not initiated such an action.

### Current Discovery Disputes

Mr. Johnson disagrees with our decision in *Johnson II*. For the ostensible purpose of proving that our decision denying his attempt to collect from the City was incorrect, he initiated discovery designed to show that the Department has no assets with which to satisfy the judgment authorized in *Johnson I*. He first propounded interrogatories to the Department, in its purported capacity as "Indemnitor of the Defendants," requesting detailed information about the Department's assets. The interrogatories did not seek any information about any assets of, or obligations owed to, the three officers. The Department sought a protective order, which the circuit court granted on June 6, 2017. In a footnote, the court stated that its order "shall not be construed to preclude the use of subpoenas or other instruments of post-judgment discovery authorized by the Maryland Rules to compel production of the information sought."

Mr. Johnson moved for reconsideration. On June 22, 2017, the circuit court denied that motion, observing that "Maryland Rule 2-421(a) limits use of interrogatories to parties" and that the Department is not a party. Mr. Johnson filed a second motion for reconsideration on July 13, which the court denied on August 16.

On July 10, 2017, after the circuit court's denial of his first motion for reconsideration regarding the interrogatories, Mr. Johnson served a subpoena for deposition and production of documents on the then-commissioner of the Department. The

3

schedule of documents to be produced sought detailed information about the Department's assets. It did not seek any information about any assets of, or obligations owed to, the three officers. On August 16, in the same order in which it denied Mr. Johnson's second motion for reconsideration regarding the interrogatories, the circuit court granted the commissioner's motion for protective order and quashed the subpoena. The court held that although the Department may be subject to an "enforcement 'action' pursuant to [the Local Government Tort Claims Act]" and applicable case law, the subpoena to the commissioner was not yet appropriate.

On November 21, 2017, Mr. Johnson served on the Department's then-chief of fiscal affairs a subpoena for deposition and production of documents. The subpoena demanded production of "[a]ny and all information consisting of documents or otherwise pertaining to the property (assets) of the Baltimore City Police Department," including without limitation information regarding a specific bank account at M&T Bank. As with the earlier discovery, the subpoena did not seek any information about any assets of, or obligations owed to, the three officers. The circuit court granted the chief's motion to quash on January 19, 2018.

Mr. Johnson noted two separate appeals: (1) on September 14, 2017, the 29th day after the August 16 order; and (2) on February 15, 2018, the 27th day after the January 19 order. Neither notice of appeal identified any specific order or judgment; both simply noted an appeal "in the above captioned case."

4

**DISCUSSION**

**I.** **WE REVIEW THE ORDERS FROM WHICH MR. JOHNSON APPEALED FOR ABUSE OF DISCRETION.**

Before turning to the merits, we address two jurisdictional issues.[2] First, pursuant to the final judgment rule, discovery orders are not ordinarily immediately appealable. *Addison v. State*, 173 Md. App. 138, 156 (2007) ("[T]he Court of Appeals has been unswerving in its position that discovery rulings (at least those which affect only the parties to the action and do not compel discovery from a high government official) may not be appealed in advance of the entry of a final judgment."). Under that rule, to be appealable, a "decision must be 'so final as to determine and conclude rights involved, or deny the appellant means of further prosecuting or defending his rights and interests in the subject matter of the proceeding.'" *Quillens v. Moore*, 399 Md. 97, 115 (2007) (quoting *Cant v. Bartlett*, 292 Md. 611, 614 (1982)). The purpose of the final judgment rule "is to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results." *Ashcraft & Gerel v. Shaw*, 126 Md. App. 325 (1999) (quoting *Sigma Reprod. Health Ctr. v. State*, 297 Md. 660, 668 (1983)). Here,

---

[2] The Department did not raise either of the issues we discuss in this Section I. However, we have an independent obligation to assure ourselves that we have jurisdiction to consider this appeal. *See, e.g.*, *State Comm'n on Human Relations v. Anne Arundel County*, 106 Md. App. 221, 232-33 (1995) ("Ordinarily, an appellate court will consider only an issue that is properly raised in or decided by the court below, unless the question involves the jurisdiction of the appellate court to hear the matter."). We note, however, that our conclusion that Mr. Johnson did not timely appeal the entry of the protective order as to the interrogatories does not ultimately affect our review because, as set forth below, the same standard of review applies to our review of the entry of a protective order and the denial of a motion for reconsideration.

where a final judgment in the underlying dispute has already been rendered, appealed, and affirmed, and nothing else is pending, the issues resolved in these discovery orders are the sole issues remaining to be decided in the case (other than, perhaps, the need to enroll a new judgment reflecting our prior ruling as discussed above in footnote 1).  If Mr. Johnson is denied the discovery he seeks, it is unclear what, if anything, would remain to be decided in the case or how there would be any future opportunity for him to appeal from these decisions.  The final judgment rule thus does not bar his appeals.

Second, we must determine which orders are properly before us on appeal.  Rule 8-202(a) generally provides that an appeal must "be filed within 30 days of the entry of the judgment or order from which the appeal is taken."  Rule 8-202(c) provides for an exception that tolls the running of that appeal period while the court considers certain motions, including motions to alter or amend that are filed within ten days of entry of the judgment or order "under Rule 2-534 and/or 2-535." *Edery v. Edery*, 213 Md. App. 369, 383 (2013).  A motion for reconsideration filed more than ten days, but within 30 days, after entry of a judgment or order may still be considered by the trial court, pursuant to Rule 2-535, but it does not toll the running of the time to note an appeal. *Pickett v. Noba, Inc.*, 114 Md. App. 552, 557 (1997) ("If the motion [under Rule 2-535] is filed within ten days of judgment, it stays the time for filing the appeal; if it is filed more than ten days after judgment, it does not stay the time for filing the appeal.").  Moreover, once a court has denied one motion for reconsideration, the filing of additional such motions does not toll the running of the time to note an appeal. *Leese v. Dep't of Labor, Licensing & Regulation*, 115 Md. App. 442, 445 (1997).

Mr. Johnson filed his first motion for reconsideration within ten days from the entry of the protective order relating to his interrogatories. Pursuant to Rule 8-202(c), the filing of that motion tolled the deadline for him to appeal from that order. The court denied that first motion for reconsideration in an order dated June 22 and entered on June 29. Mr. Johnson's second motion for reconsideration did not further toll the time to note a timely appeal.[3] *Leese*, 115 Md. App. at 445. As a result, any appeal from the entry of the protective order itself had to be filed by July 31.[4] Mr. Johnson filed his first notice of appeal on September 14. Thus, the only decision we have jurisdiction to review relating to the interrogatories is the circuit court's August 16 denial of his second motion for reconsideration, which we review for abuse of discretion. *See Miller v. Mathias*, 428 Md. 419, 438 (2012).

Mr. Johnson did timely appeal the court's orders quashing both subpoenas. We also review those decisions "under an abuse of discretion standard." *Larocca v. Creig Northrop Team, P.C.*, 217 Md. App. 536, 547 (2014), *rev'd in part on other grounds by Windesheim v. Larocca*, 443 Md. 312 (2015). An abuse of discretion occurs "where no reasonable person would take the view adopted by the [trial] court" or where the court acts "without reference to any guiding rules or principles." *Powell v. Breslin*, 430 Md. 52, 62 (2013)

---

[3] Mr. Johnson's second motion for reconsideration also was not filed within ten days from the denial of the first and so would not in any event have extended the time in which he could have noted a timely appeal.

[4] Mr. Johnson had 30 days from the entry of the order on June 29 to note an appeal. Because day 30 fell on a Saturday, he had until the following Monday, July 31, to note the appeal. *See* Rule 1-203.

(internal quotation marks and citations omitted). Moreover, "where an order involves an interpretation and application of Maryland statutory and case law," we must determine whether the trial court's conclusions are 'legally correct' under a *de novo* standard of review." *Johnson II*, 233 Md. App. at 53 (quoting *Walter v. Gunter*, 367 Md. 386, 392 (2002)).

## II. THE CIRCUIT COURT DID NOT ERR IN DENYING THE SECOND MOTION FOR RECONSIDERATION BECAUSE THE RULES DO NOT PROVIDE FOR INTERROGATORIES TO NON-PARTIES.

The Department was not a party to the underlying action and is not a judgment debtor. Although Mr. Johnson concedes that he would therefore not be permitted to propound interrogatories to the Department under Rule 2-421(a)—which authorizes service of interrogatories only if "directed to any other party"—he contends that Rule 2-633(a) is not so limited. The Department, by contrast, argues that interrogatories in aid of enforcement are also limited to parties under Rule 2-633. The Department is correct.

Rule 2-421 authorizes the use of interrogatories as a mechanism to obtain discovery in civil litigation. The Rule establishes in some detail rules for the issuance of and response to such interrogatories, including: (1) interrogatories may only be served by one party on another party; (2) interrogatories may be served in one or multiple sets; (3) absent leave of court, one party may not require another to answer more than 30 interrogatories in total; (4) each question must be counted as a separate interrogatory, no matter how "grouped, combined, or arranged"; (5) the party to whom interrogatories are directed must serve a response within the later of 30 days from service or 15 days from its initial pleading deadline; (6) the response must be under oath; (7) the response must either separately and

8

fully answer each interrogatory or "state fully the grounds for refusal to answer any interrogatory"; (8) the response must set forth each interrogatory and answer separately; (9) the response must "include all information available to the party directly or through agents, representatives, or attorneys"; (10) the response must be signed by the party making it; (11) under certain identified circumstances, the responding party may produce business records as a sufficient answer to an interrogatory; and (12) answers "may be used at the trial or a hearing to the extent permitted by the rules of evidence."

Rule 2-633 provides for post-judgment discovery in aid of enforcement of a judgment. Rule 2-633(a)(1) allows a judgment creditor to "obtain discovery to aid enforcement of a money judgment (1) by use of depositions, interrogatories, and requests for documents . . . ." Rule 2-633 does not itself impose any restrictions, guidelines, or rules applicable to any of these discovery mechanisms.

Mr. Johnson contends that the absence of any express statement in Rule 2-633(a)(1) that interrogatories in aid of enforcement may only be propounded to parties means that they are not so limited. Mr. Johnson's argument is precluded by our decision in *Melnick v. New Plan Realty Trust*, in which we held that the 2-400 Rules applicable to pre-trial discovery apply equally to discovery in aid of enforcement under Rule 2-633(a). 89 Md. App. 435, 438 (1991). In *Melnick*, we considered whether a creditor could conduct a second post-judgment deposition of a debtor in the same action without leave of court. *Id.* at 436. The creditor argued that leave was not necessary because Rule 2-633, unlike Rule 2-411(b), did not expressly require it. *Id.* at 437. We disagreed. We held that "the governing powers of the discovery procedures outlined in current Title 2" were "[i]mplicit

9

in Rule 2-633" because the policy considerations embedded in those procedures are the same before trial as they are after judgment. *Id.* at 438. Thus, "[a]lthough Rule 2-633 does not specifically refer to the 2-400 series of discovery rules, we infer from the history of the procedural rules and from the policy considerations that post-judgment discovery must be regulated by the Title 2, Chapter 400 rules." *Id.* Although we decided *Melnick* in the context of a deposition, its rationale is equally applicable to interrogatories.

Our conclusion is bolstered by the committee note accompanying Rule 2-633(a), which observes that the "limitations set forth in Rule 2-411(d) [applicable to depositions] and 2-421(a) apply separately to" pre-trial discovery authorized under the 2-400 Rules and discovery in aid of enforcement under Rule 2-633. 2018 Md. Rules Comm. Note to Rule 2-633(a). One such limitation in Rule 2-421(a) is that interrogatories may be directed only to a party.

Moreover, considering that we presume the Rules "operate together as a consistent and harmonious body of law," *Fuster v. State*, 437 Md. 653, 664 (2014) (quoting *Lowery v. State*, 430 Md. 477, 496 (2013)), we further observe that nothing in Rule 2-633 suggests that the scope of "depositions, interrogatories, and requests for documents" as allowed in aid of enforcement of a judgment should be broader than that allowed pre-trial. In the absence of any clear indication of contrary intent, it would be inconsistent with the scheme and rationale of the Rules to presume that they would so clearly delineate the scope of, and procedure applicable to, interrogatories pre-trial, but then leave entirely open and unregulated interrogatories in aid of enforcement.

10

In sum, we agree with the Department and the circuit court that interrogatories—whether issued pre-trial or in aid of enforcement—may only be propounded to parties. The circuit court was thus correct to deny Mr. Johnson's second motion for reconsideration, as well as to grant the Department's motion for protective order in the first place.

## III. THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN QUASHING THE SUBPOENAS, WHICH DID NOT SEEK INFORMATION REASONABLY CALCULATED TO AID IN ENFORCEMENT OF A JUDGMENT AGAINST THE OFFICERS.

Mr. Johnson next contends that the circuit court erred in quashing the subpoenas and notices of depositions of the Department's then-commissioner and then-chief of fiscal affairs. The Department responds that these subpoenas were properly quashed because they did not seek discovery in aid of enforcement of a judgment against the three officers.[5]

Discovery in aid of enforcement is, of course, necessarily limited to discovery that will "aid enforcement of a money judgment." Rule 2-633(a). Neither party disputes that this rule authorizes discovery in aid only of an actual, existing money judgment, not a

---

[5] In its brief, the Department appeared to question whether non-parties might ever be subject to discovery in aid of enforcement. At oral argument, however, the Department agreed that non-parties are subject to discovery in aid of enforcement as long as the subject of the discovery is assets of the debtor. The Department's position at oral argument is correct. Rule 2-633 does not purport to limit discovery in aid of enforcement further than the 2-400 Rules, which allow depositions of, and document requests to, third parties. *See* Rule 2-411 ("Any party to an action may cause the testimony of a person, whether or not a party, to be taken by deposition for the purpose of discovery . . . ."); Rule 2-412(c) (providing that non-party deponents can be required by subpoena to produce documents or other tangible things at a deposition). Moreover, Rule 2-633(b), which delineates the scope of a discovery mechanism in aid of enforcement that is not provided for in the 2-400 Rules—"examination before a judge or an examiner"—expressly contemplates examination of "any other person who may have property of the judgment debtor, be indebted for a sum certain to the judgment debtor, or have knowledge of any concealment, fraudulent transfer, or withholding of any assets belonging to the judgment debtor."

11

hypothetical or potential money judgment. And, as always, such discovery must be "relevant to the subject matter involved in the action" and "appear[] reasonably calculated to lead to the discovery of admissible evidence." Rule 2-402(a). A party's "right of discovery" in a particular action, including in aid of execution, is "limited to matter which is material and pertinent to the issue in th[e] case." *Bank v. Bank*, 180 Md. 254, 260 (1942).

Here, the problem with Mr. Johnson's deposition subpoenas is not to whom they were issued but that the information sought was neither relevant to, nor reasonably calculated to lead to the discovery of admissible evidence regarding, enforcement of a money judgment *against the three officers. See generally Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. 2006) ("Maryland Rule 2-633 also contains protections for non-parties by requiring proof that the nonparty bears a probable relation to the judgment debtor and the enforcement action before the court may order attendance at an examination."). The subpoenas did not seek any information about the officers' assets; about any debts or obligations owed to the officers; or about any concealment, fraudulent transfer, or withholding of assets of the officers. Instead, Mr. Johnson sought information regarding only assets of the Department, an entity against which he has no judgment. The circuit court was thus correct to quash those subpoenas.

Mr. Johnson argues that he should be permitted to seek this discovery from the Department notwithstanding that he does not have a judgment against it. He contends that *Houghton v. Forrest*, 412 Md. 578, 592 (2010) and *Cherkes*, 140 Md. App. at 326, establish that he has a right to collect from the Department without the need for a judgment or any additional proceedings. His reliance on those cases is misplaced.

12

In *Houghton*, the primary issue the plaintiff raised with respect to the Local Government Tort Claims Act ("LGTCA") was whether this Court had erred in holding that there was insufficient evidence to support a finding that the officer had acted with malice. 412 Md. at 591. The Court of Appeals determined that whether the officer acted with malice was irrelevant to whether the underlying plaintiff could recover from the Department. *Id* at 591-92. That is because the LGTCA made the Department liable to the plaintiff for compensatory damages assessed against the officer as long as the officer acted within the scope of his employment.[6] *Id.* Malice was thus not a precondition to the Department's liability to the plaintiff. Unlike here, scope-of-employment was not really in dispute in *Houghton*, "as [the officer's] arrest of [the plaintiff] was incident to his general authority as a police officer." *Id.* at 592. Further proceedings to determine liability were thus unnecessary. The Court made a similar determination in *Espina v. Jackson*, concluding that the Prince George's County Police Department was liable under the LGTCA predicated on the parties' stipulation that the officer had acted within the scope of employment. 442 Md. 311, 347 (2015).

In *Cherkes*, we held that the Department enjoyed sovereign immunity that prevented it from being sued directly based on the alleged tortious acts of its employees. 140 Md. App. at 323. Although the Department did have potential liability under the LGTCA to pay a judgment against the individual police officer defendants, that liability would come to pass if and only if such a judgment were entered. *Id.* at 303, 326. As there was not yet

---

[6] The Department, although a State agency, is a "local government" for purposes of the LGTCA. Md. Code Ann., Cts. & Jud. Proc. § 5-301(d)(21).

a judgment against anyone, we held that the circuit court erred when it did not dismiss the Department from that suit. *Id.* Contrary to Mr. Johnson's argument here, however, our decision in *Cherkes* made clear that the appropriate course of action in the event the Department failed to pay a future judgment against one of its officers would be to file "an enforcement action" against the Department. *Id.* at 326. Our decision in *Cherkes* does not even suggest, much less hold, that a plaintiff can initiate enforcement proceedings against the Department without taking that step. Notably for our purposes here, the Department would have the opportunity to contest scope-of-employment in the course of defending an enforcement action.

Unlike in *Houghton* and *Espina*, the scope-of-employment question here is not settled or sufficiently obvious that we can resolve it as a matter of law. Mr. Johnson argues that the officers were acting within the scope of their employment; the Department disagrees. It is the plaintiff's burden to establish its right to collect from the Department, either through an enforcement action or some other permissible mechanism. If Mr. Johnson were to pursue such an action successfully and obtain a money judgment against the Department that was not promptly paid, then he would have satisfied the necessary precondition to seeking discovery into the Department's assets under Rule 2-633.[7] At present, the only money judgment he has obtained is against the three officers. The discovery authorized by Rule 2-633 is limited to discovery that will aid in the enforcement

---

[7] Mr. Johnson's constitutional claim that the LGTCA deprives him of a remedy against the Department is not ripe because he has not yet attempted to pursue the mechanism allowed under the Rules for enforcement of the judgment.

14

of *that* money judgment. Because the subpoenas issued to the commissioner and the chief of fiscal affairs will not do so, the circuit court did not abuse its discretion in quashing them.

**IV.   IF THE OFFICERS ACTED WITHIN THE SCOPE OF THEIR EMPLOYMENT, THE DEPARTMENT IS LIABLE TO MR. JOHNSON FOR THE COMPENSATORY DAMAGES COMPONENT OF THE JUDGMENT.**

The parties dispute the nature of the Department's obligation to Mr. Johnson, if any, under the LGTCA if the officers are found to have acted within the scope of their employment. Mr. Johnson contends that the Department's liability runs directly to him. The Department asserts that its obligation, if any, would run only to the officers unless and until the officers agree to assign their indemnification claim against the Department to Mr. Johnson. Although it is not necessary for us to resolve this issue in light of our discussion above, it has been fully briefed, it is nearly certain to require resolution below on a record that is already sufficient, and so we offer the following as guidance for any future proceedings.

The nature of the Department's obligation to Mr. Johnson, if any, is a question of statutory interpretation. As such, our goal is to discern the intent of the legislature; "[w]e begin our analysis by looking to the normal, plain meaning of the language of the statute." *Wash. Gas Light Co. v. Md. Pub. Serv. Comm'n, et al.*, 460 Md. 667, 682 (2018) (quoting *Shealer v. Straka*, 459 Md. 68, 84 (2018)). We "read[] the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Id.* We also read the plain language "within the context of [its] statutory scheme," and "consider[] the purpose, aim, or policy of the Legislature in enacting the

15

statute . . . ." *Espina*, 442 Md. at 322 (quoting *Bd. of County Comm'rs v. Marcas, LLC*, 415 Md. 676, 685-86 (2010)). If the language is unambiguous and clear, "our inquiry as to the legislative intent ends" and "we apply the statute as written." *Id.* Only if the plain language is ambiguous will we look for intrinsic and extrinsic indicia of intent. *Wash. Gas Light Co.*, 460 Md. at 683 (citing *Shealer*, 459 Md. at 84).

The LGTCA provides that "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government."[8] Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(1) (2013 Repl.; 2018 Supp.). The language is clear: Provided the employees acted within the scope of their employment, the local government "shall be liable" for the judgment. *See Espina*, 442 Md. at 346 (stating that "the lynchpin of the local government's liability" hinges on whether the officers acted within the scope of employment). The Department attempts to avoid the import of this language by resorting to a related statutory provision and case law. Neither supports the Department's position.

The Department's statutory argument relies primarily on § 5-303(b)(2), which prohibits a local government from asserting immunity "to avoid the duty to defend or

---

[8] The term "tortious acts or omissions" applies to state constitutional claims as well as common law torts. *See Espina v. Prince George's County*, 215 Md. App. 611, 635 (2013) (quoting *Ashton v. Brown*, 339 Md. 70, 108 n. 19 (1995)) ("[T]here is no exception in the Local Government Tort Claims Act for constitutional torts. In fact, there is no exception in the statutory language for any category of torts."), *aff'd sub nom. Espina v. Jackson*, 442 Md. 311 (2015).

16

indemnify an employee established in this subsection."[9] Thus, the Department contends, subsection (b)(2) establishes that the "shall be liable" language in subsection (b)(1) really

---

[9] Section 5-303(a) – (c) provides:

(a) (1) Subject to paragraph (2) of this subsection, the liability of a local government may not exceed $400,000 per an individual claim, and $800,000 per total claims that arise from the same occurrence for damages resulting from tortious acts or omissions, or liability arising under subsection (b) of this section and indemnification under subsection (c) of this section.

   (2) The limits on liability provided under paragraph (1) of this subsection do not include interest accrued on a judgment.

(b) (1) Except as provided in subsection (c) of this section, a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government.

   (2) A local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection.

(c) (1) A local government may not be liable for punitive damages.

   (2) (i) Subject to subsection (a) of this section and except as provided in subparagraph (ii) of this paragraph, a local government may indemnify an employee for a judgment for punitive damages entered against the employee.

   (ii) A local government may not indemnify a law enforcement officer for a judgment for punitive damages if the law enforcement officer has been found guilty under § 3-108 of the Public Safety Article as a result of the act or omission giving rise to the judgment, if the act or omission would constitute a felony under the laws of this State.

   (3) A local government may not enter into an agreement that requires indemnification for an act or omission of an employee that may result in liability for punitive damages.

. . .

Cts. & Jud. Proc. § 5-303(a) – (c) (omitting headings added by publishers, which have no interpretive significance).

17

just imposes on the local government an obligation of indemnification running to the employee, not liability running to the underlying plaintiff. Although that word choice could perhaps be enough to create an ambiguity in a vacuum as to the nature of the indemnification obligation, we "do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone." *Espina*, 215 Md. App. at 630. When read in context with the rest of the statute, the local government's obligation under § 5-303(b)(1) unambiguously runs directly to the underlying plaintiff.

Section 5-303(a) draws an express distinction between the "liability" provided for in subsection (b) and the separate "indemnification" provision in subsection (c). Cts. & Jud. Proc. § 5-303(a)(1) (setting an overall cap on liability for "damages arising for tortious acts or omissions, or liability arising under subsection (b) of this section and indemnification under subsection (c) of this section"). Whereas subsection (b) makes a local government generally "liable" for judgments, subsection (c) exempts punitive damages from that liability, but then allows a local government to choose to "indemnify an employee" for punitive damages under certain circumstances.[10] Section 5-303 thus differentiates between when it makes a local government liable for a judgment, on the one

---

[10] The amount of punitive damages that a local government may indemnify for its employee is limited by the statutory caps set forth in § 5-303(a). *Id.* § 5-303(c)(2)(i). The local government is also precluded from paying punitive damages "if the law enforcement officer has been found guilty" in a disciplinary hearing under § 3-108 of the Public Safety Article, if the tortious action giving rise to the judgment "would constitute a felony" under Maryland law. Cts. & Jud. Proc. § 5-303(c)(2)(ii).

18

hand, and when it merely provides for a possibility of indemnification that would run to the employee, on the other.

Other relevant pieces of the interconnecting puzzle of the relationship among the local government, its employee, and the plaintiff under the LGTCA are provided in § 5-302,[11] which must be read in tandem with § 5-303. There as well, the General Assembly treats liability for the judgment itself and indemnification separately. Section 5-302 generally addresses the respective responsibilities of a local government and its employee depending on whether the employee is found to have acted with malice. Section 5-302(b)(1) generally precludes a plaintiff from enforcing a judgment against an employee who acted without malice. Thus, in that circumstance, only the local government is liable to pay the judgment, up to the statutory caps, pursuant to § 5-303(b)(1). If, on the other

___

[11] Section 5-302(a) – (b) provides:

(a) Each local government shall provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government.

(b) (1) Except as provided in paragraph (2) of this subsection, a person may not execute against an employee on a judgment rendered for tortious acts or omissions committed by the employee within the scope of employment with a local government.

(2) (i) An employee shall be fully liable for all damages awarded in an action in which it is found that the employee acted with actual malice.

(ii) In such circumstances the judgment may be executed against the employee and the local government may seek indemnification for any sums it is required to pay under § 5-303(b)(1) of this subtitle.

. . .

Cts. & Jud. Proc. § 5-302(a) – (b) (omitting headings added by publishers, which have no interpretive significance).

19

hand, the employee acted *with* malice, the plaintiff can *also* enforce the judgment against the employee, in full, pursuant to § 5-302(b)(2)(i) ("An employee shall be fully liable for all damages awarded in an action in which it is found that the employee acted with actual malice."). *Espina*, 442 Md. at 346.

That, however, is not the end of the story, as § 5-302 goes on to give the local government a right, only where the employee is found to have acted with malice, to "seek indemnification [from the employee] for any sums [the local government] *is required to pay* under § 5-303(b)(1) of this subtitle." *Id.* § 5-302(b)(2)(ii) (emphasis added). This provision, which expressly contemplates a local government recovering from its employee amounts paid as liability under § 5-303(b)(1), only makes sense if the local government's liability runs directly to the plaintiff.

The case law the Department cites in support of its alternative interpretation is also unavailing. The Department contends that *Wolfe v. Anne Arundel County*, 135 Md. App. 1 (2000), and *Brown v. Mayor & City Council of Balt.*, 167 Md. App. 306 (2006), both stand for the proposition that a plaintiff cannot proceed directly against a local government under the LGTCA in the absence of an assignment of claim from the employee. Neither does so. In *Wolfe*, the plaintiff had prevailed in federal court in a suit claiming that an Anne Arundel County police officer had raped her during a routine traffic stop. 135 Md. App. at 5. She obtained a judgment against the officer that exceeded the LGTCA cap. *Id.* After the County's self-insurance fund denied the officer's indemnification claim on the ground that rape was not within the scope of his employment duties, the officer assigned his claim against the fund to the plaintiff. *Id.* at 5-6. The plaintiff then sought a declaratory

20

judgment that, among other things, she was entitled to payment of the judgment under the County's insurance policy.  *Id.* at 6.  Finding that the County's obligation under the insurance policy was co-extensive with its obligation under the LGTCA, we agreed with the circuit court that the rape was not committed within the scope of the officer's employment and so affirmed the circuit court's entry of summary judgment for the County.  *Id.* at 10-13.  Nothing in our opinion suggests that the plaintiff could not have proceeded independently against the County without an assignment, at least up to the limit of liability established by the LGTCA.

The local government employee in *Brown*, a Baltimore police officer, similarly assigned any rights he might have against the Department to the plaintiffs who had obtained a $27 million judgment against him.  167 Md. App. at 310-16.  Based on our conclusion that the officer's murder of his wife's lover was outside the scope of his employment as a matter of law, we held that the LGTCA was inapplicable and so imposed no obligation on the Department.  *Id.* at 326-27.  Once again, the opinion contains no suggestion that the plaintiffs' claims under the LGTCA, at least up to the limits provided in that statute, required an assignment.

The Department's theory that an assignment by the officer is required for a plaintiff to pursue the Department directly also runs contrary to common sense.  Where a judgment is entered against an employee who is found to have acted without malice, the plaintiff is forbidden from collecting against the employee under § 5-302(b)(1).  Under that circumstance, what incentive would an employee have to assign any claim to a plaintiff?  Under the Department's theory, an employee's refusal to do so in that circumstance would

21

presumably leave the plaintiff without recourse. A purpose of the LGTCA is to "provide a remedy for those injured by local government officers and employees acting without malice and in the scope of employment." *Rios v. Montgomery County*, 386 Md. 104, 125-26 (2005) (quoting *Faulk v. Ewing*, 371 Md. 284, 298 (2002)). For that purpose to be effective, a plaintiff must be able to recover from a local government without the need to first obtain an assignment from the employee who wronged him or her. Any other conclusion would render the application of the statute illogical, which is a result that we avoid. *Wash. Gas Light Co.*, 460 Md. at 682 ("We will not read a statute in a way that is inconsistent with, or ignores, common sense or logic.") (quoting *Office of People's Counsel v. Md. Pub. Serv. Comm'n*, 355 Md. 1, 23 (1999)).[12]

In summary, where a money judgment is entered against an employee of a local government arising from tortious acts or omissions committed by the employee:

- The local government is liable to the plaintiff for the amount of the judgment, up to the limits provided in § 5-303(a)(1), if and only if the employee was acting within the scope of his or her employment with the local government; and

- A plaintiff who obtains a judgment against a local government's employee can establish the local government's liability by filing an enforcement action against the local government. In such a proceeding, the local government

---

[12] The Department also contends that *Houghton* stands for the proposition that a finding that its officers acted with malice would "absolve the Department of the duty to indemnify the officer," and suggests that such a finding would also mean that the Department would not owe an obligation to the plaintiff either. As discussed above, however, the Court in *Houghton* made clear that the Department's obligation to a plaintiff is not affected in any way by a finding of malice on the part of the officer. 412 Md. at 591-92. The question of malice is relevant to whether the plaintiff can collect his or her judgment from the employee (if there was malice, yes; if there was no malice, no) and to whether the Department can seek to recover from its employee any amounts it is required to pay to the plaintiff (if there was malice, yes; if there was no malice, no). *Id.* at 592.

22

can raise as a defense that the employee was not acting within the scope of his or her employment.

Of course, as set forth above, in this case the parties are not all the way there yet. Although we are able in appropriate cases to assess whether an officer acted within the scope of employment as a matter of law based on undisputed facts in the record, *Houghton*, 412 Md. at 592; *Brown*, 167 Md. App. at 326, or based on a stipulation, *Espina*, 442 Md. at 347, the record and briefing here are not sufficient for us to do so. It may be that all of the evidence necessary to make that determination was presented at the original trial and already exists, or it may be that further evidentiary proceedings are necessary. If an enforcement action is filed, that determination will need to be made by the circuit court. In the absence of a judgment against the Department, however, the circuit court was right to preclude discovery into the Department's assets.

**ORDERS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

23